Haywood, Judge.
This case is entirely new to rne ; I have not been apprized of its coming on or of the question to be agitated — I can now only form a hasty judgment upon principles that suddenly occur to my mind. Many of the cases cited are of takings by one British subject of another, the grounds of which are perhaps distinguishable from thepresent case; before we can determine this cause we must necessarily decide whether the plaintiff’s vessel and cargo were legally or illegally taken ; for iflegally taken it is not true as the declaration states that she was unjustly converted to the defendant’s use — -this is to say in plain words whether she was a prize or not — that is a question determinable by the jus'belli, and ought te be decided by some court (if at all to be decided by the courts of this country) whose peculiar business it is to decide questions arising upon tbe law of nations., — If we can decide this question in this cause, then all our state courts may decide as many such causes as may be brought, that is to say, as often as a French citizen who owned any part of a capturing vessel, or any of the sailors or officers on board can be found in this country and arrested. If we decide one of those causes, we must go on and decide all that can be brought before us. We sit here only to decide causes according to the municipal law of this county; not such causes, the decision of which may become the subjects of national complaint, and may lead to national irritation and war. If such questions are to be discussed and decided in any of the courts of this country, they ought to be courts constituted by the sovereign power, and charged by them with the decision of such questions: For the sovereign power of this country, I mean that power which can constitutionally decide upon war with foreign nations, is responsible to them for any unjust decisions that shall take place — -chey therefore should have the constitution of courts that are to decide *42 upon quections [affecting other nations; to prescribe rules to thetn for their conduct and to suspend their functions when policy dictates that measure; for it may frequently happen, that-when a citizen is realty injured, as Mr. 'Simpson supposes himself to be, that the sovereign power may not deem it expedient to redress him by attaching, imprisoning, or seizing, and selling the effects of the foreigner who did him the injury; they may chuse to dissemble and overlook the injury done to their citizen, and protect him by paying the money out of their own treasury; they may complain to the nation of the offender, and endeavor to procure redress that way ; they may negotiate for putting a stop to such injuries for the future, and for compensation, and take many other steps rather than proceed to the measure which it is now proposed this court shall adopt. This court derives its poweis from the legislature of North-Carolina: Suppose it shall proceed to the decision of this question, and that should be upon principles repugnant to and not warranted by the jus belli-, or the law of nations, and a complaint shall thereupon be made to the sovereign power of this country; vvill it do for them to say that decision was made by a court of North Carolina, over which we have no controul? We may; and having established a precedent, must do the same thing over and over again — -continually repeat injustice, till it will be no longer borne. Every state court in each of the United States may do the same thing; and the sovereign power who is responsible for their misdoings, cannot controul nor suspend them, however ■dangerous, improper and impolitic they may judge such proceedings to be. If we proceed to decide this question, there is many chances to one that we decide improperly. Have we the means of issuing the process, to give notice to all parties concerned to interpose their claims and bring forward their proofs ? - — Of giving time, issuing monitions, taking stipulations, and doing all those acts for obtaining the proper materials to form a sound judgment upon, that a court of admiralty or- of prize have ? And suppose all the materials collected, are we sufficiently versed in the law of nations, and sufficiently armed with powers to expound them, and the treaties subsisting between the United States and different nations, to decide the question ? Whenever a war breaks out in England, and questions upon the law of nations are like t.o atise, particularly with respect to captures upon the high seas, that are to be determined by the jus belli, they do not entrust those questions with their common law courts, who proceed according to the municipal law; nor even to their courts of admiralty, who proceed partly by the civil law and other laws peculiar to themselves ; but they appoint a court of prize, who frame their decisions upon tine jus belli and the law of nations. — I suppose a similar practice prevails amongst other nations. I do not therefore believe, that *43 even-the court of admiralty, much less a court of common law, can decide the question now before us : I rather think it is not determinable any where but in a court of prise of the French, Republic. V/ill they permit any other nation to say whether rights supposed to be acquired.by their citizens acting under, commissions given by them, pursuant to the directions and the laws of the Republic, shall be decided upon by the courts of another nation ? Whether they v/ill or not, such a right niay perhaps be conceded by treaty ; but T. rather think it cannot be exercised without consent. If. the Swedish courts for instance, or brinish courts, who, on account of their near situation, must llave frequent opportunities, should undertake in all such cases to decide, would it not be a just ground oí quarrel? if they a-hould decide improperly repeatedly. Might not the French nation say, who- made you the arbiter of our rights ? By what authority do you take away property which our laws vest itt our citizens? Is any nation bound to suffer such an interference ? It is asked, what remedy have we as neutrals, if we are unjustly, treated and deprived of our property by French lawu and French com is, if the French nation make prize of our vessels pursuant to regulations not warranted by that general Jaw which regulates the intercourse between nation and nation, or it their laws be agreeable to this general lav/ ? But their cap liner. and condemnations are not warranted by it. — Our citizen is entitled to redress, and our government is bound to procure it for him — but how ? — By the decisions of this court ? No: the sovereign power of the country will procure it by means, which In their judgment shall be the most expedient, considering our circumstances. If we now say that Nadiau shall refund the value of the ship and cargo; if he does not he must be imprisoned .; or if he has any effects here, they will be seised and sold ?. Js not this something like reprisals i We have no power to grant them • -11 the difference is,.we do not authorise re-capture wherever the goods of a French citizen may he found ; but it is exactly the same thing as to say, that if any French citizen who ha-: ever been concerned in sharing a capture, Comes within the limits of this state, he shall be imprisoned until he makes restitution. The counsel for Simpson, says this cannot be a question to be decided by the jus belli, for there is no war between France and us, but there is a war between France and England ; and whether we transgress the limits allowed to neutrals, the jus belli in; any particular case must, decide. If we carry contraband goods ; ii we refuse to be searched j if we sail without papers ; I'understand a neutral may be taken- — and so in many other cases: And in a case of this nature, who is to decide •' V/ill the injured nation not deems f :-r itself? Upon the whole, whether prize or not, it is clear, is a question solely and exclusively pppropriiT/Ntc a.court of admiralty or erizo court; and/,. *44 court of common law cannot decide it: 'J’his is clear, and it matters not whether there has been a condonation, for the orm.-.sion of that circumstance cannot alter the nature of the question : It remains the same, and is not of common law cognizance; and therefore, I am of opinion, we cannot determine the question before us. — However, I am net conversant with matters of this kind. I never determined, nor was concerned in a case of the like nature before ; and therefore I am willing to have the point reserved for further consideration. If I must say whether upon the facts found, this were a conversion or not, I should be inclined to say, as the ship was taken without papers, she was a prize — but I cannot think I have a right to give an opinion judicially upon the question. It is said, it is not fully proved tnat the Bellona belonged to the French nation, nor that she had a commission; enough appears to render it very probable she had, and therefore we cannot proceed without a very great risk of intermeddling in a business we ought not to concern in.
Judge Stone-
The reason why trespass would not lie in the case of Le Caux vs. Eden was because it would be prejudicial to the British navv-~it was a dispute between two subjects of the same power, and the municipal law of that country might regulate disputes between their own subjects as best suited their policy : This is a case of a different kind, where the same reasons against the action will not hold ; no public inconvenience can arise from sustaining this action. I am not so well advised as to say we have not a right to decide it; this court is to give r edress in all cases of injury to every citizen when he who committed the injury is within the power of the court; and it is immaterial by whom it is committed, whether by a Frenchman, Englisman or any other. — I think the cause bad better proceed; the law may be reserved for further consideration. The cause then proceeded, and a question was made, whether as Simpson was born under the allegiance of the King of Great-Britain, tho’ he had become a citizen of this country, the capture was lawful.
judge Haywood.
Upon this point I suppose we should determine as a French court would have a right to determine. — - The English would say he could not put off his allegiance, and would consider him a subject; I suppose the same maxim would be adopted by the French government upon the question of prize or no prize.
judge Stone. — He is our citizen and that is enough for us to consider.
The cause proceeded and the jury found a verdict for the plaintiff, and assessed damages ; and a question is to be further considered upon a motion lor a new trial.
Vide Doug. 600, 606, 609, 610, 612, 613, 572, 594. 3 Term 323. Carth. 398. 12 Mo. 134. Carth. 474. 4 Term 394, 395. 3 Term 341, 344. 3 Bl. Com. 69, 70, H. Bl. Re. 174, 176. Constitution, article 3, sec. 2.