I am of opinion, that the.decree of the Supreme'Cotirt of Errors of Connecticut be affirmed, with coils.
Paterson, Justice.
The Conftitution of Connecticut is made up of ufages, and it appears that its Legiflature have, from the » beginning, exercifed the power of granting new trials. This has been uniformly the cafe till the year 1762, when this power was,-by a legiflative aft, imparted to the fuperior and county, courts. But the aft does not remove or annihilate the pre-ex-i'fting power of the Legiflature, in this particular; it only communicates to other authorities a concurrence of jurifdiction, as to the awarding of new trials. And the faft is,' that the Legiflature have, in two inftances, exercifed this power lince the paffing of.the law in 1762. They afted in. a double capacity, as a houfe of legiflation, with undefined authority, and alfo as a court of judicature in certain exigencies. • Whether the latter arofe from the indefinite nature of their legifla-tive powers, or in fome other way, it is not necefiary to dif-cufs. From the bell information, however, which I have been able to collect on this fubjeft, it appears, that the Legif-lature, or general court of Connecticut, originally poftefied, and exercifed all legiflative, executive, and judicial authority; and that, from time to time,' they diftributed the two latter in fuch. .manner as they thought proper; but without parting with the general fuperjntending power, or the right of exercifing the lame, whenever they iliould judge it expedient. But be this as it may, it is fufficient for the prefent - to obferve, that*they . have on cei tain occafions, excercifed judicial authority front 0 the commencement of their civil polity. This ufage makes, up part of the Conftitution of Connecticut, and we are bound to confider it as fuch, unlefs it be inconfiftent with the Con-ftitution of the United States. True it is, that the awarding of new trials falls properly within the province of’the judicf- . ary; but if the Legiflature of Connecticut have'been in the uninterrupted exercife of this authority, in certain cafes, we mull, in fuch cafes, refpect their decifions as flowing from a competent jurifdiction, or conftitutional, organ. And therefore we may, in the prefent inftance,. confider the Legiflatuie of the ftate, as having afted in their cuftomary judicial capacity. If fo, there is an end of the queftion. For if the power, thus exercifed, comes more properly within the defeription-,, of a judicial than of a legiflative power; and if by ufage or the
*396 Conftitution, which, in Connecticut, are fynonimous terms, the Lcgiil'ature.of that fete a£ted in both capacities;1 then in, the café now before--us, it would be fair to confider the .awarding of a new trial, as an act emanating from the judiciary fide of the department. But as this view,, of the fubje£t militates againfehe Plaintiffs in error, their counfel has con-tertdéd for a reverfal of the judgment, on the ground, that the awarding of a nc-w trialj was the effect of alegiflative. act, and that it is ur.confHtutional, becaufe-nn ex post facto law^Yot the fake of ascertaining the meaning of thefe terms, I will confider the refolution of the General court of Connecticut, as the exer-cife of a legiflative and not a judicial authority. The question, then, which arifes on the pleadings in this caufé, is, whether the refolution’of the Legiflature of Connecticut, be an ex pbft facto lam, within the meaning cf the Conftitution of the United States ? ,1 am of., opinion, that it is not. The words, ex post facto, when applied to a law', have a technical meaning, and, in legal phrafeology, refer to crimes, pains, and penal-tie?. Judge Biackjione’s defeription of the terms is clear and-accurate,. “ There is, fays he, a ftill more unreaf.mable me- “ thod than this, which is called making of laws, ex post facto, “when after an actiqn, indifferent in itfelf, is committed, the “ Legiflator, then, for the firft time, declares it to have been “a crime, and inflicts a punifhment upon the perforf who has .“ committed' it. Here it is impofíible, that the party could ‘i forefee that an action, innocent when it was done,, fhould “be afterwards converted to guilt by a fubfequent lav/;, he “.had, therefore, no caufe to abftain from it; and all puniih- “ rhent for net abftaining, muft, of confequence, be cruel and “ unjuñ.” 1 Itf Com. 46. Here the meaning, annexed to the terms ex post facto laws, unqueftionakly refers to crimes, and nothing elfe. 'The hiftoric page .abundantly evinces;, that the power of palling fuch laws fhould be withheld from legislators ; as it is a dangerous inftrument in the hands of bold, unprincipled, afpiring, and party men, and has been two often lifer) to effect the moft deteftable purpofes.
On jnfpecting fuch of our. ftate Conftitutions, as take notice of law’s made ex post facto, we ihall find, that they are un-derftood.in the fame fenfe.
The Con'fHtution of Majfach 'uftts, article 24th of the Declaration of rights
“Laws made to punifli for actions done befors.thc exiftcnce of fuch i-:ws, and which have not been declared crimes by preceding laws, are uajuft, cppreíTive, and inconfiftent with the fundamental principles of a free government.”
TKe Conftitution of Delavjare, article nth of the Declaration of Rights :
*397 That retrofpective laws punifhing offences commuted be fore die cxiftence of fuch laws, are oppreffive and unjuft, and ought not to be made.”
The Conftitution of Maryland, articie 15th of the Declaration of Rights :
“ That retrofpective laws, punifhing faffs committed before the cxiftence of fuch law', and by them only declared criminal, are oppreffive, unjuft, and incompatible with liberty; wherefore no éx post facto law ought to be made.”
The Conftitution of North Carolina, article 24th of the Declaration of Rights :
“ That retrofpective laws, punifhing facts committed before the exiftence of fuch laws, and by them only declared criminal, ■are oppreffive, unjuft, and incompatible- with liberty j wherefore no lx pojl facto law ought to be made. ”
, From the above pi.flages it appears, that ex jofl facto laws have an appropriate fignification; they extend to penal fta-tutes, and no further; they are reftricted in legal eftimafion to the creation, and, perhaps, enhancement of crimes, pains-'and penalties. The enhancement of a crime, or penalty, feems to come within the famp mifthief as the creation of-a crime or penalty; and therefore they may be piaffed-together.
Again, the words of the Conftitution of the United States are,. “ That no State íhall país any bill of attainder, ex pojl “facto law, or law impairing the obligation of contracts.” Article iff. fection IQ.
Where is the neceffity or ufe. of the latter words, if a law impairing the obligation cf contracts, be comprehended within the terms ex post facto, law ? It is obvious from the fpecifi-cation of contracts in the laft member of the c’laufe, that the framers of the Conftitution, did not underftand dr ufe the words in the fenfe-contended for on the part of the Plaintiffs in Error. They underftood and ufed the words in their known and appropriate, fignification, as referring to’crimes, pains, and pe¿ nalties, and no further. The arrangement of the diftincf members of this fection, neceffarily points to this meaning.
I had an ardent defire to have extended the provifion in the Gonftitution to retrofpective laws i.n general. There is neither policy nor fafety-in-fuch laws ; and, therefore, I have always had a ftrong averfion againft them. It may, in general, be truly obferved of retrofpective laws of every defci iption, that they neither accord with found Icgifiation, nor the fundamental principles of the focial compact. But' on full confider-ation, I,am convinced, that (X post facto laws mud'be limited irt the manner already éxpréfled ; they muff be taken in their technical, which is alfo their comrrion-and general, acceptation, and are not to be underftopd in their literal fenfe.