# F.ALL-SPECIAL TERM.

## CHARLESTON.

### STATE v. GILMAN

#### *(GREEN, JUDGE, Absent.)

Submitted September 10, 1889—Decided November 8, 1889.

LICENSES—CONSTITUTIONAL LAW.

. That portion of section 1, ·c. 32, Code 1887, which provides that no person, without a state license therefor, shall "keep in his possession, for another, spirituous liquors," *etc.*, is unconstitutional and void.

*Dayton & Dayton* for plaintiff in error.

*Attorney-General Alfred Caldwell* for the State.

SNYDER, PRESIDENT :

At the March term, 1889, of the Circuit Court of Barbour county, the grand jury found an indictment in which it is charged that J. C. Gilman, in said county, did unlawfully, and without a license therefor, "sell, offer, and expose for sale, and solicit and receive orders for, and keep in his possession for another, spirituous liquors, wine, porter, ale, beer, and drink of a like nature," *etc.* The defendant moved the court to quash the indictment; which motion being overruled, he pleaded not guilty, and thereupon the case was tried by a jury. There was a verdict of guilty, on which the court entered judgment, fining the defendant $20.00. A motion to set aside the verdict was made and overruled by the court, and an exception taken by the defendant, in which all the facts are certified. These facts are as follows :

"John Thompson, witness for the state, testified that he did not buy whiskey of defendant within one year next pre-

*On account of illness.

ceding the finding of this indictment, but that on the 15th day of October, 1888, he got whiskey of defendant, which defendant was keeping in his possession for another person, James E. Heatherly, who was at the time a candidate for sheriff of Barbour county; and that said whiskey was kept by defendant in his possession at his hotel in the town of Phillippi in Barbour county, to be distributed free by defendant to such persons as said Heatherly should give order for or send there for it; and witness for the state had, at the time the liquor mentioned in the indictment was delivered to him by said defendant, within one year next preceding the finding of the indictment, an order from said Heatherly on said defendant for a quantity of said intoxicating liquor less than five gallons; and that upon said order, within said year, said defendant did deliver to said witness a quantity of said intoxicating liquor of less than five gallons. Defendant admits that he had no state-license to sell, solicit, or receive orders for, or keep in his possession for another, spirituous liquors, wine, porter, ale, beer, and drink of a like nature."

This indictment is framed under the provisions of section 1, c. 32, Code 1887, and is in the precise language of the statute. It is in legal form, and, as no extrinsic facts were shown to invalidate the finding of it, I think the motion to quash was properly overruled.

The said statute was amended by chapter 29, Acts of 1887, and then, for the first time, the words, "or solicit or receive orders for, or *keep in his possession for another*," were made a part of the statute. From the facts proved, it is apparent the conviction in this case must be sustained, if it is done at all, under that provision which I have italicised, "keep in his possession for another." It will be observed that this provision has no reference to the intent or purpose for which the liquor is kept in possession, but it denounces as a crime the simple fact that the liquor is kept in possession for another, however innocent the act or commendable the purpose. Has the legislature of this State the constitutional power to make such an act a crime?

The fourteenth amendment to the constitution of the United States declares: "No state shall make or enforce

any law which shall abridge the privileges or immunities of citizens of the United States;" and the same amendment makes all persons born or naturalized in the United States citizens thereof. It is conceded that the "privileges and immunities" here protected are such only as are in their nature fundamental; such as belong of right to the citizens of all free governments, and which have at all times been enjoyed by the citizens of the several States of the Union, from the time of their becoming free, independent, and sovereign. What these fundamental rights are, it is not easy to enumerate, the courts preferring not to describe and define them in a general classification, but to decide each case as it may arise. The following, however, have been held to be embraced among them: "Protection by the government; the enjoyment of life and liberty with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety, subject to such restraints as the government may justly prescribe for the general good of the whole." WASHINGTON, J., in *Corfield* v. *Coryell*, 4 Wash. C. C. 380; *Conner* v. *Elliott*, 18 How. 591; *In re Parrott*, 6 Sawy. 349, (1 Fed. Rep. 481); 6 Myer, Fed. Dec. § 1000; *Landing Co.* v. *Slaughter-House Co.*, 111 U. S. 746, (4 Sup. Ct. Rep. 652). These are inalienable and indefeasible rights, which no man, or set of men, by even the largest majority, can take from the citizen. They are absolute and inherent in the people, and all free governments must recognize and respect them. Therefore it is incumbent upon the courts to give to the constutional provisions which guaranty them a liberal construction, and to hold inoperative and void all statutes which attempt to destroy or interfere with them. Cooley, Const. Lim. (35) 44. It can hardly be questioned that the right to possess property is one of these rights, and that that right embraces the privilege of a citizen to keep in his possession property for another. It is not denied that the keeping of property which is injurious to the lives, health, or comfort of all persons may be prohibited under the police power.

The maxim, *sic utere tuo ut alienum non lœdas*, being of universal application, it must, of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others. But

it does not follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate exercise of the police power of the State ; and much less is such the case when the statute is merely claimed by its defenders to be intended for that purpose. The U. S. Supreme Court, in its opinion in *Mugler* v. *Kansas*, says : "The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution." 123 U. S. 661, (8 Sup. Ct. Rep. 273).

The keeping of liquors in his possession by a person, whether for himself or for another, unless he does so for the illegal sale of it, or for some other improper purpose, can by no possibility injure or affect the health, morals, or safety of the public ; and, therefore, the statute prohibiting such keeping in possession is not a legitimate exertion of the police power. It is an abridgement of the privileges and immunities of the citizen without any legal justification, and therefore void.

But it seems to me the said provision of the statute is in violation of that provision of our State constitution which declares that "laws may be passed regulating or prohibiting the sale of intoxicating liquors within the limits of this State." Article VI. § 46. While it is admitted to be a well-settled principle that the legislature has the same unlimited power in regard to legislation which resides in the British parliament, except where it is restrained either by the State or Federal constitution, still, it is equally true that those constitutional limitations are not confined to express inhibitions, for there are but few positive restraints upon the legislative power contained in the constitution. The third article, or "bill of rights," lays down the ancient limitations which have always been considered essential in a constitu-

tional government, whether monarchical or popular; and there are scattered through the instrument some other express provisions in restraint of legislative authority. But the affirmative prescriptions and the general arrangements of the constitution are far more fruitful of restraints upon the legislative power. Every positive direction contains an implication against everything contrary to it, or which would frustrate or disappoint the purpose of that provision. The frame of the government, the grant of legislative power itself, the organization of the executive authority, and the erection of the principal courts of justice, create implied limitations upon the law-making authority as strong as though a negative was expressed in each instance. Cooley, Const. Lim. 87; *People v. Draper,* 15 N. Y. 543.

If the people had not made the provision above quoted a part of the constitution, the legislature would, so far as that instrument is concerned. have had plenary and unrestricted authority to deal with liquors in any manner it chose to do. But the people, by declaring that "laws may be passed regulating or prohibiting the sale of intoxicating liquors," according to the principles we have announced, imposed a restraint upon this plenary power. By granting an express authority to the legislature to regulate or prohibit the sale, there is an implied inhibition to the exercise of any authority in respect to that subject which is not embraced in the grant. This rule is simply an application of the old maxim, *expressio unius est exclusio alterius,* which Lord Bacon concisely explains by saying : "As exception strengthens the force of a law in cases not excepted, so enumeration weakens it in cases not enumerated." The express power here given to regulate or prohibit the sale of liquors, unless it was intended to limit the legislative authority, would render this provision of the constitution wholly nugatory and useless ; because, as we have seen, without this provision the legislature would have had plenary power over the whole subject. It could not only have legislated in respect to the prohibition and sale of liquors, but in all other respects. It seems to me, therefore, that the purpose and effect of this constitutional provision was and is to restrict and limit the legislative authority to the powers expressly granted therein

—that is, to the power to regulate or prohibit the sale of liquors; and, consequently, a legislative act not within the legitimate scope of this express grant, unless it is a fair and reasonable exercise of the police power, must be held unconstitutional and void.

From what we have already said, it is apparent that the provision of the statute under consideration is not a fair and reasonable exercise of the police· power, nor has it any reference to the prohibition or sale of liquors. It is simply an attempt to make the possession of liquor for any purpose a crime. A very different question would be presented if the act had made it unlawful for any person to keep intoxicating liquors in his possession, either for himself or for another, for the purpose of selling it, or as a device to evade the revenue laws. But this provision has nothing in it of that kind. It makes the mere possession for another, without regard to the intent or purpose of either the possessor or of the person for whom it is kept, a crime. It would seem that, if it is a crime, or in contravention of the revenue laws, for one person to keep liquor in his possession for another, it would be equally so for him to keep it in his possession for himself; but under this act the latter is no offence; and, *e converso*, it would seem that, if the keeping of liquor, or any other property, by a person for himself, is lawful, it would be equally lawful for such person to keep it in his possession for another.

Upon the whole case, it seems to me plain, that that part of said statute which inhibits a person to "keep in his possession, for another, spirituous liquors," *etc.*, is in conflict .with both the Federal and State constitutions, and therefore void. This provision of the statute being void, the evidence in .this case fails to prove that the defendant was guilty of any legal offence, and, per sequence, the judgment of the Circuit Court must be reversed, and the defendant discharged.

. REVERSED.