### STATE v. JAKE WILLIAMS.

(Filed 1 April, 1908).

1. **Constitutional Law—Property Rights—Due Process.**

   The Constitution is the law of the land, in the sense that no citizen can be deprived of his rights thereunder by any department of the government.

2. **Constitutional Law — Unconstitutional Statute Void — Duty of Courts.**

   An offense created by an unconstitutional statute is void, and cannot be a legal cause of imprisonment; and in suits involving this question it is the duty of the court to declare its judgment thereon.

3. **Constitutional Law — Statutes — Interpretation—Presumption of Validity—Reasonable Doubt.**

   The validity of a legislative enactment is presumed, and the court should never declare a legislative enactment unconstitutional, except after careful deliberation and patient attention, and then only when, in its judgment, it is clearly so, or so beyond a reasonable doubt.

4. Spirituous Liquors—Indictment—Witnesses not Named in Bill—.
   Competency.

   A defendant charged with a violation of a statute in bringing intoxicating liquors into a certain county may be convicted upon the testimony of other witnesses than those marked on the bill.

5. Spirituous Liquors — Indictment — Sufficiency of Bill — Separate
   Counts Suggested.

   A bill of indictment charging a defendant with violating a statute by bringing into a certain county "on one certain day, more than one-half gallon, to-wit, one gallon of spirituous, vinous or malt liquors," is not fatally defective; but it would be in better keeping with the letter and spirit of the Constitution to more particularly specify, in separate counts, the kind of liquor constituting the offense.

6. Constitutional Law—Spirituous Liquors—Property—Due Process—
   Police Powers.

   Spirituous, malt, or vinous liquors are property within the meaning of the Constitution, when its manufacture or sale is lawfully prohibited by statute; and when the Legislature makes it an indictable offense to carry more than a certain quantity into a specified county, within a limited time, prohibiting its sale and not prohibiting its use, but authorizing its use for certain purposes, it is unconstitutional for that it is a taking of property without due process of law, and not within the police power of a State.

7. Evidence—Legislative Powers—Change of Rule—When Unconstitutional.

   While Legislatures may generally change the rule of evidence relating to the trial of causes, they cannot do so when the effect is to deprive the citizen of a property right guaranteed by the Constitution.

CRIMINAL ACTION, heard upon motion to quash indictment, by *Peebles, J.,* at August Term, 1907, of the Superior Court of BURKE County.

The defendant was called to plead to the following bill of indictment:

"The jurors for the State, upon their oaths, present: That Jake Williams, late of the county of Burke, on the 10th day of July, in the year of our Lord one thousand nine hundred and seven, with force and arms, at and in the county afore-

said, did unlawfully and willfully have and bring into said county of Burke, on one certain day, more than one-half gallon, to-wit, one gallon, of spirituous, vinous and malt liquors, the same not being then and there brought by the said Jake Williams to a druggist, for medical purposes, nor for delivery at the State Hospital, nor the School for the Deaf, nor Broadoaks Sanatorium, nor to Grace Hospital, in said county, for medical purposes, against the form of the statute in such cases made and provided, and against the peace and dignity of the State."

Defendant moved to quash. Motion allowed. The Solicitor for the State appealed.

*Attorney-General* for the State.
No counsel *contra.*

CONNOR, J. By chapter 24, Public Laws 1907, the Legislature enacted a statute declaring that it shall be unlawful for any person to "manufacture, sell or otherwise dispose of for gain" spirituous, vinous or malt liquors in the county of Burke. The act contains the usual exceptions in regard to sales by druggists. It is also provided that neither the manufacture of domestic wines "nor the sale of such wines at the place of manufacture in quantities not less than one gallon" is prohibited. The place of delivery of any liquors brought into the county is declared to be deemed the place of sale. Common carriers are prohibited from bringing liquors into the county, etc. The statute is amended by chapter 806, Laws 1907, by adding at the end of section 1 the following: "It shall be further unlawful for any person, except to a druggist, for medical purposes, as aforesaid, to bring into said county of Burke, in any one day, more than one-half gallon of such spirituous, vinous or malt liquors, and every person so offending shall, upon conviction, be fined or imprisoned in the discretion of the court." The motion to quash the bill of indictment involves the proposition that chapter 806 is an

unwarranted interference with defendant's property and with
his liberty; that it is violative of the Constitution, which
declares that "among the inalienable rights of all men are
life, liberty, the enjoyment of the fruits of their own labor,
and the pursuit of happiness," of which they cannot be de-
prived but "by the law of the land." That the Constitution
is "the law of the land," in the sense that no act of either
department of the government which violates its provisions or
exceeds its powers can be enforced to deprive the citizen of his
life, liberty or property, is a fundamental truth. To deny it
is to assert that constitutional government is a failure, and
liberty, regulated by law, has no abiding place in our political
system. The Constitution is, of necessity, as well as the de-
clared will of the people, the supreme law, and in no proper,
legal sense can any act of either department of the govern-
ment which violates its provisions or exceeds the powers dele-
gated be the law. To state the same proposition affirmatively,
an act of the Legislature which finds no support in the Consti-
tution or is not an exercise of the power conferred therein
imposes no duty, deprives the citizen of no right and subjects
him to no penalty. This is a "first principle," the recognition
of which is essential to the preservation of liberty.

"If the Constitution prescribes one rule, and the law an-
other and a different rule, it is the duty of the courts to de-
clare that the Constitution, and not the law, governs the case
before them for judgment." *Curtis, J., Scott v. Sanford,* 19
How., 628.

"An unconstitutional law is void and is as no law. An
offense created by it is not a crime. A conviction under it is
not merely erroneous, but is illegal and void and cannot be a
legal cause of imprisonment." *Bradley, J., Ex parte Sie-
bold,* 100 U. S., 376.

"The limitations imposed by our constitutional law upon
the action of the governments, both State and National, are
essential to the preservation of public and private rights, not-

STATE *v.* WILLIAMS.

withstanding the representative character of our political institutions." *Matthews, J., Hurtado v. California,* 110 U. S., 356.

"An unconstitutional act is not a law; it binds no one and protects no one." *Field, J., Huntington v. Worthen,* 120 U. S., 101.

"No court is bound to enforce, nor is any one legally bound to obey, an act of Congress inconsistent with the Constitution. In this country the will of the people as expressed in the fundamental law must be the will of the courts and legislatures." *Harlan, J., Robertson v. Baldwin,* 165 U. S., 297.

"Whatever the people, framing their organic act, have declared to be the limits of legislative power, and the modes in which that power shall be exercised, must always be recognized by the courts, State and National, as obligatory." *Brewer, J., Stearns v. Minnesota,* 179 U. S., 241.

It is the right of the citizen, when called to the bar of the court, to appeal to the Constitution and demand that the court declare whether the statute which he is charged with violating be "the law of the land." To make this right of any value or protection to the citizen, it must be the duty of the court to declare its judgment thereon. To deny this is to keep the promise to the ear and break it to the hope—to make of none effect the declaration that ours is a government of law and not of men.

"It will be an evil day for American liberty if the theory of a government outside of the supreme law of the land finds lodgment in our constitutional jurisprudence. No higher duty rests upon this Court than to exert its full authority to prevent all violation of the principles of the Constitution." *Harlan, J., Downes v. Bidwell,* 182 U. S., 382.

*Judge Iredell,* in *Calder v. Bull,* 3 U. S., 399 (1798), referring to the omnipotence of the British Parliament and its unrestricted power, from which they had suffered so much, and against which they waged successful war, said: "In

order, therefore, to guard against so great an evil, it has been the policy of the American States, which have individually framed their State Constitutions since the Revolution, and of the people of the United States when they framed the Federal Constitution, to define with precision the objects of the legislative power, and to restrain its exercise within marked and settled boundaries. If any act of Congress or of the Legislature of the State violates those constitutional provisions, it is unquestionably void."

"It is axiomatic that the judicial department of the government is charged with the solemn duty of enforcing the Constitution, and, therefore, in cases properly presented, of determining whether a given manifestation of authority has exceeded the Constitution as against any legislation conflicting therewith, and it has become now an accepted fact in the judicial life of this nation."

The people, in the exercise of their political sovereignty, established the government, delegated to it certain enumerated powers, assigned to it appropriate functions, established departments and assigned to them appropriate powers and duties, imposed such limitations as experience had taught to be necessary for the preservation of liberty, and, to the end that the government should not, by construction, implication or otherwise, deprive them of unenumerated, but "inalienable rights," declared: "This enumeration of rights shall not be construed to impair or deny others retained by the people, and all powers not herein delegated remain with the people." Art. I, sec. 37. This Court, in *Bayard v. Singleton,* 3 N. C., 42 (1787), after most careful consideration "and with great deliberation and firmness," unanimously declared that no act which the Legislature could pass could by any means repeal or alter the Constitution. However much we may desire· to sustain the acts of the Legislature as a co-ordinate department of the government, we may not, without being recreant to the duty imposed upon us and the rights of the citizen, refuse to

decide firmly and fearlessly the issue which he makes with the government. In the discharge of the duty and the exercise of the power to pass upon the validity of the statute, we are admonished by the uniform decisions of the courts that we should "approach the question with great caution, examine it in every possible aspect and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void unless the nullity and invalidity of the act are placed, in our judgment, beyond reasonable doubt." *Shaw, C. J.,* in *Wellington, Petitioner,* 16 Pick., 95; Cooley Const. Lim., 182. Another great Judge has said: "It is but a decent respect due to the wisdom, integrity and patriotism of the legislative body by which any law is passed to presume in favor of its validity until its violation of the Constitution is proved beyond all reasonable doubt." *Washington, J., Ogden v. Saunders,* 12 Wheat., 270.

"Necessarily, the power to declare a law unconstitutional is always exercised with reluctance; but the duty to do so in a proper case cannot be declined, and must be discharged in accordance with the deliberate judgment of the tribunal in which the validity of the enactment is directly drawn in question." *Fuller, C. J., Pollock v. Farmers L. & T. Co.,* 157 U. S., 554.

"It is our duty, when required in the regular course of judicial proceedings, to declare an act of Congress void if not within the legislative power of the United States; but this declaration should never be made except in a clear case." *Waite, C. J., Sinking Fund Cases,* 99 U. S., 718.

The same principle has been announced and uniformly followed by this Court. Before, however, discussing the principal question, we deem it proper to call attention to the vague and uncertain terms in which the bill of indictment is drawn. The defendant is charged with bringing into the county of Burke, "on one certain day, more than one-half gallon, to-wit, one gallon of spirituous, vinous or malt liquors." The names

of two witnesses are marked on the bill.    Under this indict-
ment it is held, by frequent rulings of this Court, that the
defendant may be convicted, upon the testimony of witnesses
other than those marked on the bill, of bringing into the
county, on any day within two years prior to 10 July, 1907
(except for the fact in this case that the act was not passed
until 8 March, 1907), of more than one-half gallon of either
wine, whiskey, brandy, beer or other liquor.    While we do
not hold that the bill is fatally defective, we think that it
barely corresponds to the letter or spirit of the constitutional
provision that "in all criminal prosecutions every man has
the right to be informed of the accusation against him."    The
courts have wisely given a liberal interpretation to statutes
relaxing the rigid rules regarding the particularity required
in the bill of indictment which formerly prevailed.    It would
seem that the grand jury could have made its presentment
more specific by saying which of the prohibited kinds of
liquors the defendant brought into the county.    It is hardly
probable that he brought all of them in "on one certain day."
The disjunctive "or" would indicate that the grand jury could
not ascertain from the witnesses which of them he "brought
in."    Indictments against citizens subjecting them to impris-
onment in default of bail awaiting trial, annoyance, mortifi-
cation and expense, be they never so innocent, are serious mat-
ters.    It is a vain thing to preserve in our Constitution guar-
antees of personal liberty; such as that general warrants shall
not issue, persons shall not be put to answer any criminal
charge except upon indictment by a grand jury, etc., if the
substance of them may be explained away by legal fictions and
expedients based upon real or imaginary necessity.    We
would not put unnecessary restrictions upon the government
in the prosecution of crime, but substantial rights are not to
be sacrificed.    It would be very easy to make the several alle-
gations in separate counts in the bill, thus enabling the grand

146—40

jury to ascertain from the witnesses the very truth of the charge which "upon their oaths" they make against the citizen. Under our statutes, all manner of counts, which are but separate bills, may be included and a "drag net" thrown out to insure the conviction of guilty men.

Coming to the discussion of the question presented by the motion to quash the bill of indictment—*i. e.,* whether the carrying into the county of Burke, without any unlawful purpose, more than one-half gallon of wine, brandy, etc., is reasonably related to its sale—certain questions may be regarded as settled. The Legislature, in the exercise of the police power, may, by appropriate enactments, regulate and, if they deem it conducive to the public health, morals, peace or safety, entirely prohibit the manufacture and sale of intoxicating liquors. For the purpose of making effective such legislation, they may make it criminal for any person to have such liquors in his possession, within the territory wherein the sale or gift is prohibited, with intent to sell or give away. They may prescribe or change the rules of evidence by making such possession *prima facie* evidence of a guilty intent. This Court has uniformly sustained legislation of this character. *Paul v. Washington,* 134 N. C., 363; *State v. Barrett,* 138 N. C., 630; *State v. Patterson,* 134 N. C., 612. In *State v. Dowdy,* 145 N. C., 432, we held that a certified copy of the record kept by the Collector of Internal Revenue was competent, not only as evidence, but sufficient to sustain a conviction for selling liquor in violation of the statute. We have endeavored to give full force and effect to the legislation enacted in this State for the suppression of the liquor traffic, resolving, as was our duty, every reasonable doubt regarding its validity in favor of the enactments. This legislation finds its support in the police power vested in the State Government. It is exercised primarily by the Legislature, which may adopt any measure within the extent of the power appropriate and needful for the protection of the public morals, the public

health or the public safety.   *Mugler v. Kansas,* 123 U. S.,
623.   That there is a limit to the police power which the
courts must, when called upon in a judicial proceeding, ascer-
tain and declare, is as well settled as the existence of the
power itself.   In *Mugler v. Kansas, supra,* wherein the ques-
tion underwent a most thorough investigation, *Mr. Justice
Harlan* says: "It does not at all follow that every statute
enacted ostensibly for the promotion of these ends is to be
accepted as a legitimate exercise of the police power of the
State.   There are, of necessity, limits beyond which legisla-
tion cannot rightfully go.   *    *    *   If, therefore, a statute
purporting to have been enacted to protect the public health,
the public morals or the public safety has no real or substan-
tial relation to these objects, or is a palpable invasion of rights
secured by the fundamental law, it is the duty of the courts
so to adjudge, and thereby give effect to the Constitution."
*State v. Redmon* (Wis.), 114 N. E. Rep., 137.   Recognizing
the difficulty of fixing any definite limitation upon the police
power, the courts have refrained from doing more in cases
which have arisen than inquiring whether "the real purpose
of the statute under consideration has a reasonable connection
with the public health, welfare or safety."   *People v. Hav-
nor,* 149 N. Y., 195; 52 Am. St. Rep., 707, cited in *People
v. Lochner,* 177 N. Y., 145; 101 Am. St. Rep., 973.   The
result of the decisions has been well stated in 22 Am. and
Eng. Enc., 938: "In order that a statute or ordinance may
be sustained as an exercise of the police power, the courts
must be able to see that the enactment has for its object the
prevention of some offense or manifest evil, or the preservation
of the public health, safety, morals or general welfare, and
that there is some clear, real and substantial connection be-
tween the assumed purpose of the enactment and the actual
provisions thereof, and that the latter do, in some plain, ap-
preciable and appropriate manner, tend towards the accom-
plishment of the object for which the power is exercised."

In *State v. Moore,* 113 N. C., 697, *Shepherd, C. J.,* says: "While it is for the Legislature to determine what regulations are needed to protect the public health and secure public comfort and safety (and its measures calculated and intended to accomplish these ends are generally within its discretion and not the subject of judicial review), it is, nevertheless, true that this extensive authority must be exercised in subordination to those great principles of fundamental law which are designed for the protection of the liberty and the property of the citizen." *State v. Moore,* 104 N. C., 714.

In the entire range of legislation in the exercise of the police power, no subject has received more consideration or found more varied forms of expression than the efforts to prevent the manufacture and sale of intoxicating liquor. Beginning with the Maine liquor law, the statutes and codes of every State in the Union abound with every conceivable variety of legislation having for its object the regulation, restriction or prohibition of the liquor traffic. The courts, both State and Federal, have been called on to construe, interpret and pass upon the validity of many of these statutes. They have, with remarkable uniformity, sustained them, and. when of doubtful meaning, given them such interpretation as would suppress the evil and advance the remedy. An unusually careful and diligent examination by the Assistant Attorney-General and ourselves fails to discover any statute, either in terms or scope, similar to the one under discussion. While the Legislatures have resorted to many expedients to control, regulate, restrict and prohibit the manufacture and sale, either in entire States or counties, towns, cities or districts, we do not anywhere find any suggestion that the possession of intoxicating liquor without any unlawful purpose, or carrying it into the territory wherein its sale is prohibited, with no unlawful purpose, is made indictable. While by no means decisive of the power to do so, the fact that no such attempt has been made is worthy of note in seeking the basis of the

asserted power.   It will be well to note the unusual, if not
unprecedented, terms of the statute—what it prohibits and the
penalties imposed for its violation.   Any person who shall
bring into the county of Burke in any one day more than one-
half gallon of spirituous, vinous or malt liquor, except for the
purpose of delivery to a druggist for medical purposes, is
guilty of a misdemeanor.   Unless we may read into the stat-
ute an exception to save it from interfering with religious
liberty guaranteed by the Constitution, a minister, steward,
deacon or elder of any church bringing into the county more
than the prohibited quantity of wine violates this law.   A
man who brings into the county more than one-half gallon of
wine for domestic purposes, or of spirits, for his own use or
for that of his family, for medical or for any other purpose, is
guilty.   If he would escape the penalty, he may bring it in
*to a druggist* for medical purposes, but not otherwise. . No
possible intent, purpose or occasion can avail as a defense.
A person passing through the county on the cars or in a pri-
vate conveyance, having in his trunk or baggage more than
the prohibited quantity, without stopping on his journey or
having the slightest intent to sell or give it away, is guilty.
Upon conviction, he may be fined or imprisoned in the discre-
tion of the court.   No limit has ever been fixed by this Court
to the amount of fine which may be imposed.   We have lately
sustained as not excessive a sentence of two years in the
county jail and hard labor on the public roads for violating
the liquor law.   *State v. Dowdy, supra.*   Surely, when we
recall that, upon an indictment so vague in its terms, upon a
trial in which the defendant may be convicted upon testimony
of witnesses whose names he has never heard and whom he has
never seen until confronted by them, and no definite time is
required to be fixed in the bill, the citizen may be convicted
for conduct which, but for this statute, has neither legal nor
moral guilt, may be fined in the discretion of the court or
imprisoned and, in felon's garb, in company with felons,

worked upon the public roads for two years—the courts should carefully examine the basis upon which the power to thus restrict the liberty of the citizen rests. If the statute is within the police power, it is not within our province to question its wisdom. It is ours to declare and enforce the law of the land—the Constitution—the law which the people, in the exercise of their sovereignty, have made for their protection and our guide. It is no answer to the contention that the law will be administered with justice and mercy—that only those who are guilty will be convicted and punished. Experience taught those who founded this State, established government and secured its limitations by written constitutions that the liberty of freemen could not be safely entrusted to the unrestricted sense of justice and mercy of any man or set of men. The test of the constitutionality of a statute is what it *empowers* those in authority to do.

If the quantity of intoxicating liquor which any person, for any purpose, has in his possession, except those named in the act, is a public nuisance in Burke County, it is unquestionably within the power of the Legislature to make it criminal to carry it there. No person has any legal right to create or maintain a public nuisance. This is elementary. Can it be said that the act of carrying the prohibited article into the county is, or that when carried there it becomes, *per se* a public nuisance? This suggestion was made in support of certain provisions of the Maine statute. *Shepley, C. J.,* said: "There is nothing which can be regarded as a nuisance when considered by itself alone and separate from its use. It is the improper use or employment of a thing which causes it to be a nuisance. It would be not a little absurd to declare that to be a nuisance, and as such liable to be abated and destroyed, which the act allows to be sold and purchased as an article useful for medicinal and mechanical purposes." *Merrimon, J.,* in *State v. Yopp,* 97 N. C., 477, says: "The exercise of the police power does not extend to the destruc-

tion of property under the form of regulating the use of
it, unless in cases where the property, or the use of it, con-
stitutes a nuisance.  In such cases, if the owner of the
property suffers injury, it is such as happens in the unlawful
use of it, or because the property itself, in its nature or appli-
cation, is unlawful."  *State v. Tenant,* 110 N. C., 610.  Does
spirituous, vinous or malt liquor cease to be property when its
manufacture and sale are prohibited?  *Shepley, C. J.,* in
*Preston v. Drew,* 33 Maine, 558 (54 Am. Dec., 639), says:
"It is, however, insisted on the argument that a person, by
the common law, can no more acquire property in spirituous
and intoxicating liquors than he can in obscene publications
and prints.  There is a clear and marked distinction between
them.  Such liquors may be applied to useful purposes.  This
is admitted in the act by its authorizing their sale for medici-
nal or mechanical purposes.  It is their abuse or misuse alone
which occasions the mischief.  Obscene publications and
prints are in their very nature corrupting and productive
only of evil.  They are incapable of any use which is not cor-
rupting and injurious to the moral sense."  In *Lincoln v.
Smith,* 27 Vermont, 328, in a well-considered opinion, it was
held that the Legislature had the power to prohibit the traffic
in intoxicating liquor and subject it to seizure, forfeiture and
destruction *when kept for that purpose.  Bennet, J.,* says:
"The act does not declare that they (the liquors) are not prop-
erty, and there is no language which should receive a con-
struction to forbid their being property.  Though there is a
prohibition to sell them, yet that cannot prevent a man
from having a property in them for his own use, without any
intention to sell them, and they may be transported through
the State when there is no intention to violate the law."  In
*Austin v. Tennessee,* 179 U. S., 343, it is said: "Whatever
produce has from time immemorial been recognized by cus-
tom or law as a fit subject for barter or sale, particularly if
its manufacture has been made the subject of Federal regu-

lation and taxation, must, we think, be recognized as a legiti-
mate article of commerce, although it may to a certain extent
be within the police power of the State." So *Taney, C. J.,*
in the *License Cases,* 5 How., 504, says: "But spirits and
distilled liquor are universally admitted to be subjects of
ownership and property." If, then, the spirits, wine or beer,
as the case may be, which the defendant had on 10 July, 1907,
was his property, he was, by virtue of the constitutional guar-
antee that he shall enjoy the fruits of his own labor and pur-
sue his own happiness, entitled to carry it with him whither-
soever he went, and apply it to his own use in such manner
as he saw fit, unless prohibited by some law enacted in accord-
ance with and in the exercise of the power conferred upon the
Legislature. The Legislature had the power to prohibit him
from selling this property in the county of Burke. This it
has done. It had the further power to prohibit him from
having it in his possession or carrying it into the county with
intent to sell, and to make the possession *prima facie* evidence
of the unlawful intent. *State v. Barrett, supra.* It has not
undertaken to prohibit him from using it for himself or from
keeping it for domestic purposes in his family. It has not
undertaken to prohibit him from giving it away in the county.
The language of chapter 24 of the Acts of 1907 is "to sell,
manufacture or otherwise dispose of *for gain."* Conceding
the power of the Legislature to prohibit any person from
using or drinking wine, spirits or beer as a beverage, or to have
it in his possession or carry it into the county for that pur-
pose, the prohibition imposed by the statute is not so limited.
Except to deliver to a druggist for medical purposes, or to
certain State and health institutions named, the carrying it
into the county for *any purpose* is made a misdemeanor.
Assuming that the wine or spirits described in the bill of
indictment was the defendant's property, the fruits of his
labor, he was entitled to carry it with him whithersoever he
went, unless in doing so he injuriously affected the public

morals, health or safety, or his doing so was so reasonably
related to the sale of intoxicating liquor, which is the thing
prohibited in Burke County, as to come within the police
power.   It is no answer to his contention to say that, if spirits,
he would probably drink it, or, if wine, permit his family to
use it for domestic purposes, because the law does not pro-
hibit him from doing either.   Viewed from any possible point
of view, the sole question is, What, if any, relation has the act
of carrying into the county of Burke, in any one day, more
than one-half gallon of vinous, spirituous or malt liquors, in
said county, to the sale of such liquor?   In view of the
numerous uses to which that quantity of such liquor may be
put, other than selling, and of the improbability of any rea-
sonable person carrying into the county the prohibited quan-
tity for sale, can it be insisted that any such real or substan-
tial relation to the sale exists?   The only case in which a
statute at all similar to the one before us has been before the
Court is *State v. Gillman,* 33 W. Va., 146 (6 L. R. A., 847).
The defendant was indicted for violating a statute making it
a misdemeanor "to keep in his possession for another" spirit-
uous liquor.   Upon a motion to quash the bill of indictment,
the court said: "The keeping of liquor in his possession by a
person, whether for himself or another, unless he does so for
the illegal sale of it, or for some other improper purpose, can
by no possibility injure or affect the health, morals or safety
of the public, and, therefore, the statute prohibiting such
keeping in possession is not a legitimate exercise of the police
power.   It is an abridgement of the privileges and immuni-
ties of the citizen, without any legal justification, and, there-
fore, void.   *   *   *   It is simply an attempt to make the
possession of liquor, for any purpose, a crime.   A very dif-
ferent question would be presented if the act had made it un-
lawful for any person to keep intoxicating liquors in his pos-
session, either for himself or for another, for the purpose of
selling it."   It is unquestionably true that the Legislature

may make the mere possession of burglars' tools, counterfeiting outfits, gaming tables, etc., obscene pictures or prints, and probably other articles incapable of any lawful use, indictable. They are essentially injurious to the public welfare— incapable of any use consistent with the public welfare. Many articles, such as decaying animals or things emitting noisome, poisonous vapors or odors, may be summarily destroyed. They are either not the subject of property rights or are public nuisances. We find no statute or decision of any court treating vinous, spirituous or malt liquors within this classification. In *Washington v. Ah-Lim,* 9 L. R. A., 395, it is held by a divided Court that a statute prohibiting the use of opium, by smoking and inhaling the fumes thereof through an "opium pipe," is a valid exercise of the police power. Two of the five Judges dissented. In *Ex parte Mon Luck,* 29 Oregon, 421, a statute prohibiting any person from having in his possession or offering for sale opium and other enumerated drugs made from opium, who has not obtained a license from certain officers, was held valid. *Bean, C. J.,* said: "Opium is an active poison and has no legitimate use except for medicinal purposes; but it is frequently used to produce a kind of intoxication by smoking or eating," etc. Noticing the case of *State v. Gillman, supra,* he says: "But the principle of that case has no application here. It is a matter of common knowledge that intoxicating liquors are produced principally for beverages, and so common has been their manufacture that they are regarded by some courts as legitimate articles of property, the possession of which neither produces nor threatens any harm to the public. But the use of opium for any purpose, other than as permitted in this act, has no place in the common experience or habits of the people of this country," etc. It is unnecessary to further discuss these cases. The distinction, as pointed out by the courts making them, is obvious. We do not hold that common carriers may not be forbidden to transport liquor into prohibition territory. That

question is not before us. Nor do we undertake to express any opinion regarding the effect of the Fourteenth Amendment upon the power of the States to deal with the manufacture or sale of liquor, or the power of Congress to legislate upon the question of interstate transportation. Nor do we express any opinion in regard to the right of the State to prohibit liquor bought in nonprohibition territory with intent and for the purpose of bringing into prohibition territory in such quantities as are reasonably related to or indicate a purpose to sell. We decide nothing except the question raised upon the record. Chapter 806 of the Laws of 1907, prohibiting any person from carrying into the county of Burke in any one day more than one-half gallon of vinous, spirituous or malt liquor, is not a valid exercise of the police power, for that it unduly restricts the right of the citizen to the use of his property, without any intent to violate any prohibited act in relation to it; that the carrying into the county of Burke of the prohibited quantity has no reasonable, substantial relation to the sale of liquors, as prohibited by law. It may be well to repeat that we have expressly held valid the "anti-jug" law, which makes the place of delivery the place of sale, thus effectually prohibiting the sale of liquor in one place in the State for the purpose of delivering in another place. *State v. Patterson, supra.*

It is suggested that the defendant might, by way of defense, show that he had no unlawful intent, or that he carried it into the county for a lawful purpose. That would be to write language into the statute which is not there, and do violence to the intention of the Legislature. If its terms were doubtful and open to interpretation, it would be our duty to so interpret it as to make it correspond to the Constitution, because we would presume that the Legislature intended to comply with the Constitution. We have retained this appeal from the last term and given to the question our most careful

and anxious consideration. We are constrained, both by reason and authority, to conclude that in quashing the indictment there was

No Error.

CLARK, C. J., dissenting: The statute of 1907 (chapter 24) forbids anyone to "bring" any quantity of spirituous liquor, however small, into the county of Burke, for any purpose whatever, even for the owner's own use (wine excepted), by making it in the county, even out of one's own grain or fruit. It has been held universally that nothing in the Constitution prevents the expression of the will of the people to that effect by their representatives in the Legislature. It would require much ingenuity to frame a constitutional provision that would enable the Legislature to forbid the "bringing in" liquor, in any quantity, for any purpose whatever, by its manufacture in the county, and would at the same time disable the people, speaking through their Legislature, from prohibiting the "bringing it in" across the county line, when manufactured perhaps in an adjoining county.

If there is such a constitutional provision, no one has been able to find it. Certainly it has not been referred to or pointed out in the opinion of the Court. There is no express power conferred by the Constitution to hold any statute unconstitutional, and such power has not been asserted by any court anywhere outside of the United States. Three centuries ago Sir Edward Coke, tentatively but not judicially, put such doctrine forward in England, and he was so completely overwhelmed by the contrary argument by my Lord Bacon that it has never since been recognized as sound doctrine in England, and has been ever denied since by all the courts of the English-speaking world (and by all others) save this. Here, soon after the Revolution, the courts assumed this power without any constitutional provision conferring it. It has now long been acquiesced in by the courts, but with this well-recognized limitation, that there must be a constitutional

provision and there must be a statute in conflict with it, and the statute must, "beyond reasonable doubt (*Ogden v. Sanders,* 12 Wheat., 213; *Sutton v. Phillips,* 116 N. C., 504; Cooley Const. Lim., 254 [7th Ed.]), conflict with the provision in the Constitution." A statute cannot be held unconstitutional "on general principles," nor because the lawyer or lawyers on a court may think that the larger number of lawyers and others in the Legislature have enacted a law unadvisedly or unwisely, or that it is harsh or too comprehensive. If the lawmaking body has jurisdiction of the subject, how it shall legislate upon it is a matter for their discretion. The courts have no veto power.

If the Legislature has power to absolutely prohibit the manufacture of liquor, in any quantity, for any purpose, it must have the power to prohibit its importation from other points in the State. As to importations across the State line, that point is not before us, but it is notable that every bill now pending in Congress to prohibit the importation of intoxicating liquor into prohibition States is worded like the statute (1907, ch. 806) now before us, and does not restrict the prohibition to such liquor only when imported "with intent to sell."

Conceding that the provision of the statute before us, which restricts the importation of intoxicating liquor into Burke County in quantity of more than a half-gallon a day by any one person, would forbid the importation of a larger quantity per day by him, even though it might be for his own consumption, is not that as much as one could safely consume per day, and would not the importation of a larger quantity per person per day be prejudicial to the public health and, presumedly at least, for the use of others? In limiting each person to a half-gallon per day for his own use (for the law permits no sale) the Legislature was not niggardly. Besides, if the manufacture, though exclusively for one's own use and out of one's own apples and peaches, in the county can be forbidden by statute without breaking the Constitution, why

·cannot the importation of the same article across the county line, in a greater quantity than a half-gallon per day, even for one's own use, be prohibited by the same power? The truth is that, the Legislature having jurisdiction of the subject, the limitations upon its exercise rest in the wisdom and sound judgment of the Legislature, subject only to review by the people, not by the courts.

The act contains exceptions allowing importations in unlimited quantity "by druggists for medical purposes" and for use by the hospitals and sanitariums in the county, and it is clear that, even at the limit of one-half gallon per day to each person, enough can be brought in for all necessary and proper purposes. Certainly the ministers can thus get enough for communion purposes, for they cannot buy it after it is brought in, sale being forbidden by the uncontested part of the act. The Legislature was not so liberal when it passed the admittedly valid act forbidding the manufacture of liquor in the county, even for one's own use, or its sale for the use of others.

The act prohibits the bringing "into" the county of more than one-half gallon of liquor by any person on any one day. By no construction can that be held to forbid the carrying it "through" the county. The theological controversy over the form of baptism was subtle and critical, but it never occurred to anyone to assert that the Greek word *eis* (into) meant *dia* (through). Certainly the members of the Legislature must be credited with knowing the difference between two such common Anglo-Saxon words as "into" and "through," and that, when they forbade any person "bringing into" the county more liquor per day than he could be reasonably supposed to bring for his own use, to-wit, a half-gallon, they did not intend to prohibit "carrying it through" the county. On the contrary, it was exactly what they wished—that, if it got in there in larger quantity, it should be carried on through and out of the county.

If this is a bad law, public opinion as formulated by the

Legislature placed it on the statute book, and the same power can repeal it. The courts should not do so. As General Grant, when President, well observed, "The best way to secure the repeal of a bad law is to enforce it." It does not make an act unconstitutional that no preceding act like it has been passed, for this must have been the case at some time of every kind of statute. Every declaration of the legislative will must, when first made, have been without a precedent. "The world moves, and we must move with it." There are, however, other statutes like this: Laws 1907, ch. 112, "To prohibit the manufacture, sale and importation of liquor into Lincoln and Catawba Counties," and Laws of 1907, ch. 380, ".To prevent   *   *   *   the transportation or delivery of intoxicating liquors into Rutherford County" (secs. 2 and 7).

If the Legislature can make it illegal to manufacture liquor at all, it can make it illegal to import it at all. If it has power to make it unlawful to sell it, it can make it unlawful to buy it, for it is the same transaction. It is a vain thing to prohibit liquor being "manufactured" in a county if the Legislature is powerless to prohibit it being "imported" from another county. To "import" is to "bring in" across the county line, either by one's self or by an agent.

HOKE, J., also dissents from the opinion of the Court.