R. F. SIMONTON, Cashier, *v.* J. B. LANIER and others.

A motion to vacate a judgment and be allowed to plead on account of excusable neglect, under sec. 133, C. C. P., is addressed to the discretion of the presiding Judge, whose decision is not subject to review.

The provision in the charter of the Bank of Statesville, that the Bank "may discount notes and other evidences of debt, and lend money upon such terms and rates of interest as may be agreed upon," does not authorize the Bank to charge more than the legal rate, 8 *per cent.*, for money loaned.

The construction of statutes commented on and explained.

(*Huggins* v. *White*, 65 N. C. Rep. 393; *Clegg* v. *N. Y. White Soapstone Co.*, 66 N. C. Rep. 391; *State* v. *Melton*, Busb. 49; *State* v. *Woodside*, 9 Ired, 496; *Drake* v. *Drake*, 4 Dev. 110; *Pub. Treasurer* v. *Pettway*, 2 Jones Eq. 396; 4 Jones Eq. 287, cited and approved.)

CIVIL ACTION on a promissory note given to the Bank of Statesvile, tried at Spring Term, 1874, cf IREDELL Superior Court, before his Honor, *Judge Mitchell.*

The summons sued out by plaintiff was returnable to Fall Term, 1873, and was duly served on defendants. The complaint was regularly filed within the first three days of the term, and on Saturday of the second week of the term, the defendants having filed no answer nor otherwise pleaded, judgment was assigned in favor of the plaintiff for the amount claimed in his complaint. Soon after the adjournment of the Court, a transcript of the judgment was docketed in the office of the Clerk of the Superior Court of Davie county, and an execution issued thereupon. About the 10th of May thereafter the defendant Lanier applied to Judge Mitchell for an order restraining the plaintiff and sheriff of Davie county from enforcing said execution ; and also requiring the plaintiff to show cause at the next term of Iredell Superior Court why the judgment should not be set aside, and the defendants allowed to plead. The order was granted upon the affidavit of the defendant, and the plaintiff notified thereof.

At the return term of the notice, the defendant moved to vacate the judgment, under section 134, C. C. P. His Honor, from the affidavits of the parties and the pleadings, found the following facts :

That defendant, Lanier, had written to R. F. Armfield, Esq., an attorney of the Court residing in Statesville, to appear for the defendants in the suit instituted by the plaintiff; and that he, Mr. Armfield, from some cause, did not receive defendant's letter. That defendant, Lanier, had also spoken to W. H. Bailey, Esq., another attorney of the Court, residing in Salisbury, to appear in the case; that Mr. Bailey was present during some part of the term, but from some misunderstanding, did not appear for defendants. That the defendants live in Mocksville, about twenty-six miles from Statesville; and that none of them were present at any time during that term of the Court, nor had any correspondence with the attorneys named.

Upon the foregoing facts, his Honor was of opinion that the defendants had not shown such excusable negligence, as to entitle them to the benefit of sec. 133, C. C. P., and so decided.

The defendants further contended, that the note sued on was usurious, and moved to vacate the judgment on that account, and if the Court refuse to grant this motion, it was moved that the judgment be corrected by striking from the sum recovered all interest.

It was admitted by plaintiff that the interest was computed at the rate of one and one-half *per cent.* per month, and that the judgment was intended to draw that rate until paid. And it was found by the Court as a fact, that the note sued on was due the plaintiff as Cashier of the Bank of Statesville, and that the rate charged, one and one-half *per cent.*, was that agreed on between the parties. Upon these facts, his Honor, not considering the note usurious, refused both motions. The judgment was corrected by allowing certain credits.

From the rulings of his Honor, upon the points above presented, the defendants, after judgment against them, appealed.

*McCorkle & Bailey* for appellants.

*Folk & Armfield,* and *Furches,* contra.

BYNUM, J.   1. The first motion of the defendants was to set aside the judgment theretofore rendered in this action, and allow them to answer and defend.   This motion was founded upon C. C. P., sec. 133.   The facts relating to this motion, as found by the Court are, that prior to the Court, when judgment was taken, the defendants spoke to an attorney, in Statesville, and also wrote to another to appear and defend the action, but that neither of them did appear, and that judgment was entered by default, in the regular course of the Court.   The defendants do not otherwise show why they did not personally attend Court, nor do they now allege that they have a meritorious defence to the action.   His Honor refused to allow the motion, because no legal excuse was rendered for the neglect to appear and defend.   The facts found do not constitute it error in law, in his Honor, to refuse the motion, but under the section of the C. C. P. cited, the application was addressed to the discretion of the Court, and his decision thereon was final, whether refusing or allowing the motion.   *Hudgins* v. *White,* 65 N. C. Rep., 393; *Clegg* v. *N. Y. White Soap Stone Co.,* 66 N. C. Rep., 391.

2. The first motion having been disallowed, the next was to correct and reform the judgment by striking out the amount of the alleged usurious interest computed in it.

The facts found as to this point are, that the note sued on was given to the plaintiff as Cashier of the Bank of Statesville for money loaned, at the rate of 1 1-2 per cent. per month interest, and that the judgment included such interest to its rendition, and the principle was to bear the same rate of interest until the judgment was satisfied.   His Honor refused this motion, holding that the contract was not usurious, under the act of the Assembly ratified the 22d March 1870, as amended by an act ratified 4th February, 1871, by which this " States-

ville Bank," is claimed to be incorporated. Was this ruling correct, in law, is the question.

After enacting that a bank be established in the town of Statesville, to be styled the "Bank of Statesville," the third section of the act is in the following language, as amended by the amendatory act, viz: "That the said Bank may discount notes and other evidences of debt, and lend money upon such terms and rates of interest as may be agreed upon, receive and pay out the lawful currency out of the country, deal in exchange, gold and silver coin and bullion, and purchase and hold a lot of ground for a place of business, and may, at pleasure, sell or exchange the same, and may hold such other real property and estate as may be conveyed to secure debts, and may sell and convey the same. It may receive on deposit any and all sums of money on terms to be agreed on by the officers and depositors, and may receive on deposit moneys held in trust by administrators, executors, guardians or others, and issue certificates therefor, having such interest as may be agreed on by the officers and depositors, not to exceed the legal interest, which certificates shall be assignable and transferrable under such regulations as may be prescribed by the President and directors, and all certificates and evidences of deposit, signed by the proper officers of the bank, shall be as binding as if under the seal of the bank." Private Acts, 1869–'70, chap. 64.

The public law regulating and fixing the legal rate of interest, Bat. Rev., chap. 114, declares that "the legal rate of interest upon all sums of money where interest is allowed shall be six *per cent*. per annum for such time as interest may accrue, and no more: *Provided, however,* That any person may, for the loan of money, but upon no other account, take interest at a rate so great as eight *per cent.*, if both the consideration and rate of interest shall be set forth in an obligation signed by the party or his agent," and then the act provides that if the lender agrees to take a greater rate of interest than eight *per*

*cent.* when the rate is named, or six *per cent.* when it is not named, the interest shall not be recoverable at law.

. The plaintiff contends that the following language in his alleged act of incorporation, to wit, " May discount notes and other evidences of debt, and lend money upon such terms and rates of interest as may be agreed upon," confers the right to exact the rate of interest here agreed upon, although greater than eight *per cent.*, the legal rate by the public law. The defendants deny this, and the case turns upon the proper construction of that part of the act just recited.

It is a cardinal rule that if a statute is plain and unambigious, there is no room for construction ; the Legislature has spoken and its will must be obeyed. The duty of the Court is peremptory and inflexible. It can look neither to the right or left, neither to the policy, wisdom or expediency of the act. But when the meaning of the act is ambigious and doubtful it is the object of judicial investigation and the duty to ascertain the intention of the Legislature which framed the statutes. *Fisher* v. *Blight*, 2 Cr. 358, 399.

That there is room for construction here cannot admit of a doubt. The statute nowhere confers an *express* power to exceed the legal rate of interest, and the power can be derived by *implication* only. The operative words, " any rate of interest that may be agreed on," may mean any rate of interest *above* eight *per cent.*, or they may mean any rate of interest *not greater* than the legal rate. Can it be a question that it was not the legislative intent to confer upon this private bank the power to exact 18, 25 or 50 *per cent.* interest on the loan of money, and thus utterly subvert the public law and well settled policy of the State upon the subject of usury, and that, too, not for the common advantage, but for the exclusive benefit of a single private company. Ordinarily, a grant of corporate privileges, even to a private company, imports some public advantage as a compensation for the grant. If a turnpike, canal or railroad company is incorporated, the compensation to the public for the grant is, that by paying the tolls the

people have the right to their use, and can compel the recog-nition of their rights. But this is a grant of extraordinary privileges and exemptions, without any compensation to the public whatever.

If the right to take the interest claimed were plainly and expressly given, would not the act be unconstitutional? Art. 1, sec. 7, of the Constitution, declares that "no man or set of men are entitled to exclusive or separate emoluments or priv-ileges from the community but in consideration of public ser-vices." What public services has this bank rendered in con-sideration of the grant? It agrees to pay taxes, but carefully guards against paying more than other tax payers on the same valuation of property. It neither has paid or agreed to pay any consideration for the extraordinary and exclusive emolu-ments and privileges it claims to be conferred upon it by the State, not for a definite period, but in *perpetuity*, as the char-ter is of indefinite duration. Art. 1, sec. 31, Constitution, ex-pressly proh b ts such a monstrous pretention : " Perpetuities and monopolies are contrary to the genius of a free State and ought not to be allowed." The wisdom and foresight of our ancestors is nowhere more clearly shown than in providing these fundamental safeguards against partial and class legisla-tion, the insidious and ever working foes of free and equal government.

But, passing by the constitutional objection, which we believe is fatal to the claim of the plaintiff, the construction he con-tends for cannot be maintained. When the language of a statute is ambiguous, construction is resorted to to ascertain the legislative intent, and to this end,

1. The first rule is that statutes, *in pari materia*, though made at different times and not referring to each other, are to be taken together as one system and as explanatory of each other. *Earle of Ailesbury* v. *Patterson*, Dong. 30. *State* v. *Melton*, Busb., 49.

In the latter case, Melton, a man of Indian descent, and Byrd, a white woman, claimed to be married, but were in-

dicted for living in fornication and adultery, under the act of 1838, which declared that " It shall not be lawful for any free negro or person of color, to marry a white person," and that any such marriage should be void. The parties came within the literal meaning as well as words of the act, yet the Court held that it was not the legislative intent to punish such parties, however remote the degree of color, and this construction was given because a prior statute of 1836 had affixed a penalty to such marriages, if such colored person were within the third degree, and putting both statutes together, it was held not the intention of the law to make such marriages indictable, however remote the degree.

*State* v. *Woodside*, 9 Ired., 496, is to the same effect.

Taking, therefore, the public act, fixing the rate of interest for the State at large, with this private act, providing in words for taking " such rate of interest as may be agreed upon," the equitable and fair construction of the legislative intent, in the latter act is, that " the rate of interest may be such as the parties agree on, not greater than the legal rate."

2. A private statute will not, by *implication*, repeal a public statute. It is true that every affirmative statute is a repeal of a prior affirmative statute, so far as it is contrary to it, under the maxim, *legis posteriores priores abrogant*, but the law does not favor implied revocations, nor is it to be allowed, unless the repugnancy be plain ; and where, in the latter act, there is no clause of *non obstante*, it shall, if possible, have such construction, that it shall not operate as a repeal. *State* v. *Woodside*, 9 Ired., 498.

There is a marked difference in the rules of construction applicable to public and private statutes. Public laws are founded on the gravest considerations of public benefit. They are deliberately enacted, are permanent in character, are for the equal benefit of all, and of universal application. Not so with private statutes. These are not of common concern, and do not receive the watchful and cautious scrutiny of the legislature, which is devoted to those of a public character. They are

often procured by agents, and for a purpose, who are watchful to take advantage of any relaxation in legislative vigilance. Hence, the grant to one citizen and the restriction upon another, should be limited to the persons, and the extent therein plainly set down. The Court, therefore, will not by construction, carry a private act, beyond its words or a necessary implication from them, but on the contrary, there is an implication in favor of the general law and the rights of the public. *Drake* v. *Drake*, 4 Dev., 110. *Public Treasurer* v. *Petway*, 2 Jones Eq., 396; 4 Jones Eq., 287.

If we look beyond the rules of construction as established in our Courts, we find both the English and American authorities, uniform to the same point, that all grants of privileges are to be construed literally in favor of the public and strictly against the grantor of the monopoly, franchise or charter, and that whatever is not unequivocally granted in such act, is taken to be withheld.

For instance, LIEBER announces the following, among other rules of interpretation of statutes:

1. "The particular and inferior cannot defeat the general and superior."

2. "Privileges or favors, are to be construed so as to be least injurious to the non-privileged or un-favored."

3. "The general and superior, prevails over the specific or inferior; no law, therefore, can be construed contrary to the fundamental law. If it admits of another construction, it must be adopted."

4. If the law admits of two constructions, that is to be taken, which is agreeable to the primary law." *Hermeneutic*, 120, 16.

"If laws of doubtful meaning be connected with or related to other laws which throw any light on their purport, the interpretation thus derived, is to be adopted." *Doneat*, as cited in *Ledgw. on Stat. & Const. Law*, 284.

The same principles of construction will be found in *Scales* v. *Pickering*, 4 Bing. ; 11 East., 652; 4 Pel. 514; Sedgwick, 339 ; 1 Kent, 500.

Without further criticism upon the provisions, and the omission of provisions, for the just protection of its customers, in this bank charter, we only decide now, that the act purporting to establish the "Bank of Statesville," does not confer upon it, the right to charge a greater rate of interest, than that established by the general law. While, therefore, the Court below, under section 133, C. C. P., and the discretionary powers there conferred, could rightfully refuse to set aside the judgment, *in toto*, it was error in law, to give judgment for this usurious interest, and it was error, not to allow the motion to correct the judgment so as to make it conform to law.

As the defendants come into this Court to ask favors, and this is a Court of equity as well as law, they will be required to do equity; that is, to pay the debt and legal interest thereon, for the loan of money, to wit: 8 per cent. The Court below will reform the judgment according to this opinion, and upon the payment of the judgment, thus reformed, it will cause satisfaction thereof to be entered of record.

To that end the cause is remanded. Judgment reversed and case remanded.

