### STATE v. PATTERSON.

(Filed March 1, 1904).

1. INTOXICATING LIQUORS — *Statutes* — *Caption* — *Acts 1903, ch. 349—Acts 1903, ch. 233.*

> Acts 1903, ch. 349, sec. 2, making the place of delivery to the purchaser of intoxicating liquors the place of sale, applies to the whole state, notwithstanding the limitation in the title of the act to certain counties.

2. VENUE—*Intoxicating Liquors—Const. U. S., Sixth Amendment— Acts 1903, ch. 349—Jury.*

> Under Acts 1903, ch. 349, sec. 2, making the place of delivery to the purchaser of intoxicating liquors the place of sale, an indictment at the place of delivery is not prohibited by the sixth amendment to the constitution of the United States.

DOUGLAS, J., dissenting.

INDICTMENT against J. G. Patterson, heard by *Judge C. M. Cooke,* at January Term, 1904, of the Superior Court of DURHAM County. From a verdict of guilty on a special verdict, the State appealed.

*Robert D. Gilmer, Attorney-General, Manning & Foushee* and *R. B. Boone,* for the State.

*Winston & Bryant,* for the defendant.

CLARK, C. J. The defendant is indicted for selling spirituous liquor to one Guess in the town of Durham, where such sale is prohibited by virtue of an election had under the provisions of chapter 233, Laws 1903.

The special verdict finds that the defendant was not a druggist, and had no license to sell spirituous liquor within the city of Durham; that he resided in Roxboro, where he had license to sell spirituous liquor; that Guess sent the defendant two dollars by mail with an order to ship said Guess at Durham one gallon of corn whiskey by express, charges prepaid, which the defendant did, and the whiskey was delivered to Guess in Durham; that said Guess was not a druggist, nor was said liquor sold to him upon the prescription of a regularly practicing physician.

The point presented therefore is whether this was a sale at Roxboro, where the liquor was delivered to the carrier by the defendant for transportation to Guess; or was it a sale at Durham, where it was received by Guess and where such sale was prohibited by law.

Laws 1903, chapter 349, section 2, provides: "That the place where delivery of any spirituous, malt, vinous, fermented or other intoxicating liquors is made in the State of North Carolina shall be construed and held to be the place of sale thereof, and any station or other place within said State to which any person, firm, company or corporation shall ship or convey any spirituous, malt, vinous, fermented or other intoxicating liquors for the purpose of delivery or carrying the same to a purchaser, shall be construed to be the place of sale: provided this section shall not be construed to prevent the delivery of any spirituous,

malt, vinous, fermented or other intoxicating liquors to druggists in sufficient quantities for medical purposes only."

This section is explicit that the place of actual delivery to the buyer, or to which it shall be shipped for delivery to him, *"shall be construed to be the place of sale."* It is contended that this provision does not have the effect of the plain purport of the words used by the law-making power, because—

1. This section 2 is found in a statute entitled "An Act to prohibit the manufacture, sale and importation of liquors in Cleveland, Cabarrus, Mitchell and Gaston Counties." Formerly the caption of an act was not at all considered to any extent whatever in construing it, for reasons given in *State v. Woolard,* 119 N. C., 779, but the modern doctrine is that when the language of the statute is ambiguous, the Courts can resort to the title as aid in giving such act its true meaning, but that this cannot be done when the language used is clear and unambiguous. *Randall v. Railroad,* 107 N. C., 748, 11 L. R. A., 460, S. C., 104 N. C., 410; *State v. Woolard,* 119 N. C., 779; *Hines v. Railroad,* 95 N. C., 434, 59 Am. Rep., 250; *Blue v. McDuffie,* 44 N. C., 131. To like purport in *Hadden v. Collector,* 72 U. S., 107, *Mr. Justice Field* uses the following language: "At the present date, the title constitutes a part of the act, but it is still construed as only a formal part; it cannot be used to extend or to restrain any positive provisions in the body of the act." The language of section 2 is "that the place where delivery of any spirituous, malt, vinous, fermented or other intoxicating liquors is made in the *State of North Carolina* shall be construed and held to be the place of sale thereof." * * * This provision is positive in its character, and its operation cannot be restrained by any reference to the title of the chapter. In the sections of chapter 349, other than sections 1 and 2, there is no reference to the

place in which the act is to be operative, and hence by reference to the title they are to be applied only to the four counties therein named. Section 1 is specifically made operative in the counties therein named, and is to take effect at a different date, and section 2 is made operative as to the sale of any spirituous or intoxicating liquors anywhere in the State, and as to them the title cannot be used to restrict or extend the meaning of the explicit, clear and unambiguous language used.

It is well settled, says *Ruffin, C. J.,* in *Humphries v. Baxter,* 28 N. C., 439, "that one part of a statute may be public in its nature, while another is local and private." Part of a statute may be local and another of general application, part may be a public statute of which the Court will take judicial notice, and another part a private statute which must be set up in the pleadings, and whether an enactment in a statute is general or local, public or private, is a question of law for the Court, and is not determined by the nature of the act in which the enactment is found, nor by its publication in the public or private statutes." The decisions are uniform as to this. *State v. Wallace,* 94 N. C., 827; *Durham v. Railroad,* 108 N. C., 401; *State v. Barringer,* 110 N. C., 529; *Hancock v. Railroad,* 124 N. C., at p. 225; Potter's Dwarris, 53.

2. It is further objected that if the statute had this meaning it is unconstitutional, but we are not pointed to any section of the Constitution which forbids the law-making power to designate the place of sale when the goods are shipped by the vendor to the vendee by a common carrier or other agency. It is true the Courts have held that the place of sale is where the goods are delivered to the carrier, the latter being the agent of the vendee, thus making the constructive delivery, instead of the place of actual receipt of the goods by the purchaser, the place of sale. This rule is of com-

paratively modern origin, and, at first, was held to apply only when the vendee designated the carrier by whom the goods were to be shipped. *Davies v. Peck,* 8 D. & E., 330. It has not been uniformly held, and is subject to many exceptions (1 Beach Cont., section 563; 2 Kent Com., 499), as the right of stoppage in transitu, and other exceptions. It is merely a rule of judicial construction, which was made in the absence of legislation, and is not protected by any constitutional provision from legislative power to change it. Especially can the Legislature change such rule in the exercise of its police power over the sale of intoxicating liquors, when, as here, it can be readily seen that, with the multiplication of common carriers and the speed and ease with which intoxicating liquors can be shipped, it would be a vain thing to prohibit the sale of liquor in any designated territory, if vendors, a short distance off, can at will fill orders coming from within the prohibited territory upon the judicial fiction that the sale is complete upon delivery to the carrier, who is construed as the agent of the vendee. Whether it may or may not require an act of Congress to make a similar change as to liquor shipped into prohibited territory from points outside the State, in no wise affects the power of the State to so provide when the shipment is from another point in the State. *Rhodes v. Iowa,* 170 U. S., 402. In *O'Neill v. Vermont,* 144 U. S., 323, as construed by the same court in *Railroad v. Simms* (Dec. 1903), it seems to be held that, by virtue of the police power, shippers of intoxicating liquors into a State from without its borders are subject to the same regulations as shippers from points within the State, it not being a matter of taxation upon interstate commerce. But that point is not now before us.

Where one upon one side of the line of a political division, as a State or county, shoots across the line and kills a person on the other side, the Courts have held that the act

STATE *v.* PATTERSON.

is committed where the shot is delivered by striking the body of the victim. *State v. Hall,* 114 N. C., 909, 28 L. R. A., 59; 41 Am. St. Rep., 822, or, if he commit false pretense by a letter delivered in another State, the offense is committed in the State in which the letter is delivered. *In re Sultan,* 115 N. C., at p. 60, 28 L. R. A., 294, 44 Am. St. Rep., 433. A statute modifying the latter rule was sustained in *State v. Caldwell,* 115 N. C., at p. 800; and in *Com. v. McLoon,* 101 Mass., 1, 100 Am. Dec., 89, in which *Gray, J.,* said that the statute rested upon the general power of the Legislature to declare any wilful or negligent act which causes an injury to persons or property in its terri tory to be a crime. The General Assembly has authorized the people of Durham to hold an election by virtue of which it is deemed injurious to sell intoxicating liquors in the limits of Durham, and by virtue of such exercise of the police power, and to make it effective, it is further enacted that the sale shall be deemed made in Durham (or elsewhere in this State) upon the delivery there of the injurious article to the buyer, just as in the case of a shot fired across the line, or a letter or poison so sent by the mail or other agency.

It was suggested on the argument, though the point is not made in the record, that the statute contravenes the Sixth Amendment to the United States Constitution, which pro vides that in all criminal prosecutions the accused shall be tried by a jury of the State and district where the crime shall have been committed. But aside from the fact that the law has construed the crime to be committed in Durham, where the forbidden article was actually delivered, instead of at Roxboro, where it was only constructively delivered, it is well known that the first ten amendments were all passed as restrictions upon the Federal government and courts, and as a concession to States which reluctantly and hesitatingly had entered into the Union upon a pledge that

such amendments should be submitted. That these amendments are restrictions upon the Federal government, and not upon the States, has been uniformly held in the United States. Supreme Court. *State v. Caldwell,* 115 N. C., at p. 803 and cases there cited; *Fox v. Ohio,* 46 U. S., 410; *Cook v. U. S.,* 138 U. S., 157; *Barron v. Baltimore,* 32 U. S., 343; *Spies v. Illinois,* 123 U. S., 131, and there are numerous others. *Twitchell v. Com.,* 74 U. S., 321; 2 Tucker Cons., section 325, and cases collected in 3 Rose's notes, 368-372. In *Barron v. Baltimore, supra, Marshall, C. J.,* referring to the first eleven amendments, said: "These amendments contain no expression indicating an intention to apply them to the State governments. This Court cannot so apply them." Upon the special verdict the defendant should be adjudged· guilty.

Reversed.


DOUGLAS, J., dissenting. Regardless of any personal predilections, I am forced to dissent from the decision of the Court as a pure matter of law. It is impossible for me by any process of reasoning to bring my mind to the conclusion that the Legislature had a *legal* intention of doing something that I am morally certain never entered their minds.

It is a matter of common knowledge, borne out by the legislative journals and published laws, that the Legislature, after most careful consideration, enacted a general act intended to reduce the regulation of the whiskey traffic throughout the State to a uniform system as far as possible. In framing this act two bills were earnestly pressed by their respective supporters—the Watts bill, which was substantially adopted, and the London bill, which was ably drawn and expressed in clear and exact language the purposes of its distinguished author. These bills represented

distinct schools of thought, and the adoption of one over the other was an unmistakable expression of legislative preference. At the same term at which the Legislature passed the general act and the act now held by the Court to be amendatory to the general act, it also passed twenty-five or thirty other acts relating to the same general subject. These acts profess to be local, like the act now construed by the Court as general in its operation, and, with four exceptions, are likewise printed in the public laws. Can we suppose that the Legislature intended every section in every one of these numerous acts to operate as an amendment to the general act unless specifically restricted in each section? If one of them can have such an effect, why should not the others? If that were so, what would become of the general act, and what hope would there be of extricating the law from the hopeless confusion that would result? Oliver Cromwell denounced the laws of England in his time as "a tortuous and ungodly jumble." If the great Protector were brought face to face with our liquor laws, including the general act with all the amendments constructively adhering thereto, and the infinite variety of municipal ordinances passed thereunder, I fear that words would fail him.

But it may be asked what other construction is open to us? The answer seems simple enough to me—construe those statutes to be general which on their face profess to be general, and those to be special which are avowedly special. Of course I am now alluding to conflicting statutes passed at the same session of the Legislature and *in pari materia*. Where there is neither conflict nor ambiguity in the statute, there is no room for interpretation. The act containing the section which the Court now says is general in its application is specifically entitled, "An Act to prohibit the manufacture, sale and importation of liquors in *Cleve-*

*land, Cabarrus, Mitchell and Gaston Counties."* I know
that it has been said that the caption or title is no part of
the act. This was so originally, because in England all acts
of Parliament passed at the same session were considered
as one act. The separate acts had no captions when passed,
and hence the captions were not the words of Parliament,
but of the speaker or some parliamentary clerk, who subse-
quently added them thereto. But now, since the title has
become a part of the act as passed by the Legislature itself,
the rule is necessarily different. Indeed, the title has be-
come so essential a part of the act that it is sometimes taken
as the act itself. Section 23 of Article II of the Constitu-
tion provides that "All bills and resolutions of a legislative
character shall be read three times in each House before
they pass into laws."

It is a well known fact that bills are rarely ever read in
full except on the second reading, if then; and that they are
habitually "read by title" on both the other readings. If
the Legislature did not consider the title as an essential
part of the bill, giving substantial notice of its contents,
would not such habitual action be a flagrant violation of the
Constitution?

I have said that these acts are *in pari materia,* being
passed by the same Legislature, at the same session and upon
the same general subject-matter. They should therefore be
construed together so as to preserve them both as complete
and effective acts, each operating within its own sphere of
action. 26 Am. & Eng. Ency. (2 Ed.), 620, *et seq.,* and cases
cited therein; Black Int. Laws, sec. 86; Sedgwick Stat. &
Const. Law, 247; Endlich on Int. of Stats., secs. 43, 44, 45,
56; *State v. Bell,* 25 N. C., 506; *Simonton v. Lanier,* 71
N. C., 498; *Rhodes v. Lewis,* 80 N. C., 136; *Bowles v.
Cochran,* 93 N. C., 398; *Wortham v. Basket,* 99 N. C., 70;
*Wilson v. Jordan,* 124 N. C., 683. I do not feel that any

legal principle forces me to impose such a constructive intent upon the Legislature, and I feel sure that no such intent existed in fact. Custom permits the writer of a dissenting opinion to allude to known facts outside the record. In the light of such facts it will hardly be contended that the Legislature *actually* intended the act in question to apply to any counties other than those mentioned in its title. I understand that the author of the bill disclaims any such general application; and I am informed on the highest authority that when the bill was read in the Senate, it was distinctly asked and positively answered that it did not apply to any counties other than those named therein. Upon that assurance it was passed.

It is not for me to discuss the merits of the act, but, in answer to a suggestion in the opinion of the Court, I may say that the practical effect of the section is not so much to restrict the traffic as to force it into the hands of nonresidents who can carry it on with impunity? All that the present defendant has to do is to "move a little further from the road," over into the State of Virginia, and continue his business. But this does not influence me in my view of the law. As to the moral effect of a statute not resting upon the will of the people, I may be permitted to express my doubts. After years of faithful devotion to the cause of temperance, I am satisfied that it can never rest upon a legal fiction, and that no great moral question ever made any permanent advancement along the pathway of indirection.