STATE v. J. W. BAILEY.

(Filed 9 December, 1914.)

**Intoxicating Liquor — Unlawful Sale — Evidence — Trials — Defense—Good Faith—Questions for Jury.**

Evidence that the defendant delivered intoxicating liquor to another in North Carolina and received money for it is evidence of his guilt, upon a trial for an illegal sale of such liquors, requiring that the case be submitted to the jury; and while the defense is open to him that he had ordered it from beyond the borders of the State, where such transactions are lawful, in good faith, and not as a subterfuge to evade the law, but solely for accommodation and without profit, it is for the jury to deter-

mine the truth of the matter upon the evidence under proper instruction from the court. *S. v. Burchfield*, 149 N. C., 541, and that line of cases, cited and distinguished, and the Webb-Kenyon law is held inapplicable to the facts of the case.

CLARK, C. J., concurring in result on grounds stated by him.

APPEAL by defendant from *Harding, J.*, at August Term, 1914, of BURKE.

The defendant was indicted in the Superior Court for selling intoxicating liquor to Pink Thorne. The defense is that he did not sell the liquor to Thorne, but that the transaction in which liquor was delivered to Thorne at his home was conducted with him by his wife, who is now dead. The State introduced evidence to the effect that Pink Thorne had received liquor from the defendant and paid him $1 for it. The witness Pink Thorne testified: "I have forgotten how much money I gave him, possibly something like $1." He also stated that he and defendant ordered some liquor, contributing the money together, and he got a gallon and defendant a gallon, and he thought it came from Richmond, Va., but did not know whether it did or not. There was also evidence from which the jury might have inferred that the liquor was ordered from Richmond, Va., by defendant, shipped by express to him upon a prior agreement between Pink Thorne and defendant that the latter, in ordering his gallon, should also order one gallon for the witness, which the latter afterwards received and for which he gave defendant $1, it being a purchase by defendant and delivery to the witness solely for his accommodation, the liquor having been bought in Richmond, Va., and shipped on joint account, all of which was done in good faith and not to evade the law. There was also evidence tending to show that defendant had brought some of the State's witnesses to court in his automobile and was associating with them under suspicious circumstances, though he denied that he said anything to them about the case, and stated that they were to pay him for the service. The defendant testified that he was sick and confined to his bed, and that his wife ordered the liquor, and it was gotten by the witness Pink Thorne through her, and not through him, he having nothing to do with it. There was testimony as to defendant's good character, and also as to his bad character. He was convicted, and appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Avery & Huffman and Clark & Broughton for defendant.*

WALKER, J., after stating the case: When the State had offered evidence tending to show that defendant had delivered liquor to Pink Thorne and received $1 therefor from him, it was entitled to have the case submitted to the jury, this being some evidence of his guilt (*S. v.*

*Johnston,* 139 N. C., 640), and then it was for the jury to decide whether there had been an illegal sale or whether the defendant had acted in good faith in purchasing the liquor in Virginia for the mere accommodation of Pink Thorne. The question of good faith on the part of the defendant could not have been eliminated by the judge in his charge, although there may have been strong evidence to establish it, and especially when there was a view of the evidence which negatived it and tended to show defendant's guilt. *S. v. Whisnant,* 149 N. C., 515; *S. v. Wilkerson,* 164 N. C., 431. The charge of the court, which was a clear statement of the law applicable to the case in its every phase, gave defendant the full benefit of his contention that he had not in fact sold the liquor nor delivered it illegally, and that it was purchased in Richmond, Va., one gallon for himself and one for Pink Thorne, as an accommodation to him, the judge telling the jury, plainly and distinctly, that if it was bought in Richmond, Va., and shipped to defendant for the purpose stated, in good faith, the defendant would not be guilty, and they should so find. The jury have said, under this fair and faultless charge, that defendant illegally sold the liquor and did not buy it for the accommodation of Pink Thorne, having himself no profit or interest in the transaction. There was ample evidence to warrant this verdict. The jury might have found that the liquor was not shipped from Richmond, Va., but was procured in this State illegally, and delivered to defendant, for money, which would be criminal (*S. v. Burchfield,* 149 N. C., 537), or that he sold it outright in this State, the alleged purchase outside the State being a mere pretense or subterfuge, and intended as a cloak for his illegal act. The question of good faith, being one of fact, was undoubtedly for the jury to decide. The character of the defendant, the suspicious circumstances, and other matters deposed to by the witnesses directly bore upon this question.

It is sometimes necessary to look below the surface of a transaction, or, as in this case, a sale of liquor, to discover its real nature. It may have a perfectly innocent form when we view it superficially, whereas, if examined more critically, its illegal character is clearly exposed. It is the function of the jury to make this investigation, and among other circumstances they may consider is the good faith of the party. If this were not true, the prohibition law might easily be evaded and flagrant violators of it would escape punishment. The law against the sale of liquor, which has received the pragmatic sanction of the Legislature, with the emphatic consent of the people, should be fairly and reasonably construed and strictly enforced according to their will as plainly expressed, leaving no chance or opportunity for its evasion and no loophole for the escape of the guilty. When a dealing in liquor is clearly within its prohibition, a conviction and an infliction of the penalty should follow; but, at last, the jury would find the facts and the court declare the law thereon.

We have not considered the effect of the act of Congress, ratified 3 March, 1913, and known as the "Webb-Kenyon law," as we have disposed of the case upon other sufficient grounds, and therefore it would be supererogatory to do so. The cases of *S. v. Patterson,* 134 N. C., 612; *S. v. Long, ibid.,* 754; *S. v. Herring,* 145 N. C., 421, and *S. v. Williams,* 146 N. C., 630, and *S. v. Burchfield,* 149 N. C., 541, are not pertinent to the discussion of this case, in the view we have taken of it, as they were decisions upon intrastate sales, where the transactions were conducted wholly within this State. If the defendant imported the liquor for an illegal purpose, towit, a sale in this State, the case might be brought within the terms of the Webb-Kenyon law, because, as consignee, he might have no right to make such a disposition of it. But the defendant was not indicted for importing liquor into the State for an illegal purpose, but for unlawfully selling it here. Whether it is within the constitutional power of the Legislature to prohibit the introduction into this State of liquor which is intended solely for private use or consumption, we prefer not to say, as it would be now a moot question, the Legislature not having passed any such general law. It would, therefore, be improper to express any opinion upon it in advance.

The motion to nonsuit, at the close of the evidence, was, therefore, properly refused, as was also the request to instruct the jury that they should return a verdict of not guilty.

No error.

CLARK, C. J., concurs in result on the following additional grounds:

1. Even if "the defendant had acted in good faith in purchasing the liquor in Virginia, for the mere accommodation of Pink Thorne," it would have been no defense, for Revisal, 3534, provides: "If any person shall unlawfully and illegally procure and deliver any spirituous or malt liquors to another he shall be deemed and held in law to be the agent of the person selling said spirituous or malt liquors, and shall be guilty of a misdemeanor and shall be punished in the discretion of the court." It had been held in *S. v. Taylor,* 89 N. C., 577, that "When a defendant purchases intoxicating liquors in good faith for another, as his agent, he is not guilty." It was to cure the mischief of this decision that Revisal, 3534, was enacted. This statute was sustained by *Brown, J.,* in *S. v. Johnston,* 139 N. C., 640, and by *Walker, J.,* in *S. v. Burchfield,* 149 N. C., 541, and even though the liquor was brought in from another State, *Vinegar Co. v. Hawn, ib.,* 356.

2. If it be objected that, applying the above statute, the sale must be ascribed to Richmond, Va., to avoid this evasion the General Assembly enacted Revisal, 2080, which provides: *"Place of Delivery of Liquor, Place of Sale.* The place where delivery of any intoxicating liquor is

made in the State of North Carolina shall be construed and held to be the place of sale thereof." In *S. v. Patterson,* 134 N. C., 612, this statute was held constitutional, the Court saying (at p. 616): "It would be a vain thing to prohibit the sale of liquor in any designated territory if vendors a short distance off can at will fill orders coming from within the prohibition territory upon the judicial fiction that the sale is complete upon delivery to the carrier, who is construed as agent of the vendee. Whether it may or not require an act of Congress to make a similar change as to liquor shipped into prohibited territory from points outside the State in no wise affects the power of the State to so provide when the shipment is from another point in the State." This has now been done by the United States act, ratified 3 March, 1913, known as the "Webb-Kenyon" law.

*S. v. Patterson* was cited as authority, *S. v. Long,* 134 N. C., 754. In *S. v. Herring,* 145 N. C., at p. 421, *Hoke, J.,* citing it, held: "The Legislature has the authority, and it is not unconstitutional, to make the place of delivery the place of sale in a county where the sale of spirituous liquor is prohibited." At that time the sale of liquor was prohibited in only a part of the State. In *S. v. Williams,* 146 N. C., at p. 630, *Connor, J.,* said: "If the quantity of intoxicating liquor which any person, for any purpose, has in his possession, except those named in the act, is a public nuisance in Burke County, it is unquestionably in the power of the Legislature to make it criminal to carry it there."

In *S. v. Mugler,* 123 U. S., 623, it was held that the Legislature could prohibit any one from manufacturing liquor, "though solely for his own use." If so, the Legislature can make it illegal to import it at all. If it has power to make it unlawful to sell it, it can make it unlawful to buy it, for it is the same transaction. It is a vain thing to prohibit liquor being "manufactured" in a county if the Legislature is powerless to prohibit it from being "imported." If the act of the Legislature was powerless heretofore to prohibit the importation from another State, this has now been cured by the Webb-Kenyon law, which gives the State the same power as if the liquor had been manufactured in this State.

Independent, therefore, of the reasons so well given in the opinion of the Court in this case, the defendant should be held guilty; certainly this is so as to all "imports" since the passage of the Webb-Kenyon law. Our statute, Revisal, 2080, making the "place of delivery of liquor the place of sale," applies irrespective whether the place of origin is in another State or within this State. And Revisal, 3534, makes the person who procures it for the purchaser guilty of a misdemeanor.