STATE OF WEST VIRGINIA v. ADAMS EXPRESS CO.

(Circuit Court of Appeals, Fourth Circuit. January 13, 1915.)

No. 1325.

1. INTOXICATING LIQUORS ⬡═══6—PROHIBITION—DELIVERIES BY CARRIER.

Since the right of a state under its police power to enact prohibitive legislation is based upon the recognized evil of the consumption of liquor as a beverage, the state can, not only prohibit acts which amount to sale at common law, but also other acts within its border, such as deliveries by carriers which tend to defeat or weaken its public policy of preventing consumption of liquor as a beverage.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 4; Dec. Dig. ⬡═══6.]

2. INTOXICATING LIQUORS ⬡═══6 — REGULATION — STATE POWERS — PLACE OF SALE.

The power of a state to regulate its internal commercial affairs includes the power to change the rule of common law that a sale is completed on delivery to a carrier, to a rule that a sale of intoxicating liquors is not completed until delivery by the carrier to the consignee, and that the place of delivery shall be the place of the sale, so long as such legislation does not interfere with interstate commerce.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 4; Dec. Dig. ⬡═══6.]

3. INTOXICATING LIQUORS ⬡═══13—PROHIBITION—PLACE OF SALE—CONSTITUTIONALITY OF STATUTE.

The amendment to Constitution of West Virginia prohibiting the manufacture and sale of intoxicating liquors, even if intended to apply only to sales under the common-law rule that delivery to the carrier shall complete the sale, does not impliedly deprive the Legislature of its power to enact Acts W. Va. 1913, c. 13, § 3 (Code 1913, c. 32a, § 3 [sec. 1282]), providing that the place of sale should be the place of delivery by the carrier.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 15; Dec. Dig. ⬡═══13.]

4. INTOXICATING LIQUORS ⬡═══265—DELIVERY BY CARRIER—INJUNCTION.

The fact that Acts W. Va. 1913, c. 13, § 3, exempts the carrier from the provision that any person who shall act as the agent or employé of a manufacturer or seller, or person keeping intoxicating liquor, shall be guilty as a principal, does not prevent the issuance of an injunction to restrain the habitual giving of aid by a carrier to those engaged in violating the law.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 404; Dec. Dig. ⬡═══ 265.]

5. INTOXICATING LIQUORS ⬡═══262—DELIVERY BY CARRIERS—STATUTE.

Nor is the requirement of that act that the carrier shall keep books showing the name of the consignee of liquors consent that the carrier might transport and deliver contraband liquors.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 402; Dec. Dig. ⬡═══262.]

⬡═══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. INTOXICATING LIQUORS ⬤═⇒262—SOLICITING ORDERS—USE OF MAIL.

The fact that one who solicits orders for intoxicating liquors to be delivered in West Virginia contrary to the laws of that state makes use of the United States mails for that purpose affords no protection to him, or to the carrier delivering the liquor sold as the result of such solicitation.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 402; Dec. Dig. ⬤═⇒262.]

7. COMMERCE ⬤═⇒8 — REGULATION — INTOXICATING LIQUORS — WEBB-KENYON ACT.

The Webb-Kenyon Act March 1, 1913, c. 90, 37 Stat. 699 (U. S. Comp. St. 1913, § 8739), which prohibits the shipment of intoxicating liquors into a state to be received, possessed, sold, or in any manner used contrary to the state law, applied to liquor shipped into West Virginia contrary to Acts W. Va. 1913, c. 13, though the act was adopted before the Webb-Kenyon Act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⬤═⇒8.]

8. COURTS ⬤═⇒365—RULES OF DECISION—STATE DECISIONS—CONSTRUCTION OF FEDERAL STATUTE.

A decision by a state court that the Webb-Kenyon Act does not apply to shipments of intoxicating liquor contrary to a state statute adopted before its enactment is not controlling upon the federal courts, since the question is one of the construction of the federal statute rather than of the state statute.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. ⬤═⇒365.]

9. INTOXICATING LIQUORS ⬤═⇒112½ New, vol. 20 Key-No. Series—REGULATION —TRANSPORTATION.

The Webb-Kenyon Act, prohibiting the shipment into a state of intoxicating liquors to be there received, possessed, sold, or in any manner used in violation of law, prohibits the delivery by a carrier of liquor transported from without the state, to a consignee within the state for his own personal use, in view of Acts W. Va. 1913, c. 13, § 3, prohibiting the sale of intoxicating liquors and providing that the sale shall be deemed to be made in the county where delivery is made by the carrier to the consignee.

10. COMMERCE ⬤═⇒9—INTERSTATE COMMERCE—INTOXICATING LIQUORS.

The Webb-Kenyon Act is not unconstitutional as an attempt to confer upon the states the power to regulate interstate commerce, since Congress has the power to exclude from interstate commerce either absolutely or conditionally articles which are recognized to be injurious.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 6; Dec. Dig. ⬤═⇒9.]

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Suit for injunction by the State of West Virginia against the Adams Express Company, an association. From a decree of the District Court dismissing the bill (219 Fed. 331), complainant appeals. Reversed.

Fred O. Blue, of Charleston, W. Va., and Wayne B. Wheeler, of Columbus, Ohio, for appellant.

George E. Price, of Charleston, W. Va., and Joseph S. Graydon, of Cincinnati, Ohio (Lawrence Maxwell, of Cincinnati, Ohio, on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

⬤═⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WOODS, Circuit Judge. The state of West Virginia brought this suit in the circuit court of Kanawha county against the Adams Express Company, R. H. Clendenin, and Edward Beigel, alleging: That Beigel, a resident of Cincinnati, Ohio, sent through the mails to many persons in West Virginia circular letters soliciting the purchase of intoxicating liquors, contrary to the law of the state; that Clendenin, induced by the solicitation, ordered from Beigel one-fourth of a barrel of beer which was carried by the Adams Express Company from Cincinnati to Charleston, W. Va., and was there held by the carrier ready for delivery when the bill was filed; and that Beigel intends to continue to ship into West Virginia by the defendant express company beer on orders so solicited. The breach of duty to the state alleged against the express company was its failure to use due diligence to ascertain before carrying the beer whether the contract for its sale was made in pursuance of an illegal scheme of solicitation, and that by delivering the beer, as it intended, it would aid Beigel in his unlawful attempt to make sales in West Virginia, inasmuch as the statute makes the place of delivery the place of sale. Beigel was not served. The relief asked, with which we are now concerned, is that the state—

"be awarded an injunction against the said defendant, the Adams Express Company, restraining it, its agents, employés, and representatives, from delivering to the defendant R. H. Clendenin the consignment aforesaid of one-fourth barrel of draught beer; and that defendant the Adams Express Company, its agents, employés, and representatives, be enjoined from delivering to the defendant, or to any other person, any shipment of liquors manufactured by the Pabst Brewing Company and handled by said defendant Beigel, or any of his agents, representatives, or employés at any place where said defendant express company operates in the state of West Virginia, within the jurisdiction of the court, unless the consignee of any such liquors can show to the satisfaction of the defendant express company, its agents, representatives, and employés, that he without solicitation from said Beigel, or any of his agents, representatives, or employés, ordered the consignment of liquors for his own personal lawful use without having received from said Beigel, or any of his agents, representatives, or employés, advertisements or letters soliciting orders for liquors, or price lists or order blanks advertising or soliciting from the consignee orders for liquors."

A preliminary order of injunction was made by the state court, but upon removal of the cause to the District Court for the Southern District the District Judge, on motion of the Adams Express Company, dissolved the injunction and dismissed the bill, holding that the state law could not prevent solicitation through the United States mails for the sale of liquor, and that there is nothing in the Wilson Act or the Webb-Kenyon Act which authorizes the state to interfere with the shipment and delivery of liquors ordered by a citizen of West Virginia for his own personal use from a licensed dealer without the state.

The appeal requires a consideration of the scope and effect of the West Virginia constitutional and statute law and the effect upon it of the act of Congress of March 1, 1913, known as the Webb-Kenyon Act.

[1] 1. In trying to comprehend the legislative purpose in prohibition statutes it is important to remember that the ultimate end sought in prohibition legislation is not the prevention or restriction of the mere sale of intoxicants, but the prevention of their consumption as a beverage. The sale being the most usual and obvious means by which

drinking is accomplished, legislation is more often directed against the sale. But it is upon the recognized evil of individual consumption as a beverage that the right of a state under its police power rests to enact prohibitive legislation; and in the exercise of that right it cannot be denied that the state may legislate not only against acts which would constitute a sale at common law, but against other acts within its borders, such as deliveries by common carriers, which tend to defeat or weaken its public policy of preventing the consumption of liquor as a beverage.

We are not concerned in this case with the question whether the state Legislature or the state Legislature and the Congress in conjunction can forbid a citizen to drink intoxicating liquors or purchase them in another state and bring them into the state of West Virginia for his own consumption; but with the very different question whether the state may forbid the sale of liquor in its borders and make the delivery by a carrier a sale at the place of delivery; and whether the Congress can prohibit the transportation in the state by the common carrier of liquor so to be delivered contrary to the law of the state. We think it can be demonstrated that this question must be answered in the affirmative—that it can be made perfectly manifest that shipments into the state and deliveries by common carriers, by which liquor dealers outside of prohibition states were enabled to thwart the efforts of state governments to save the people of the state from the liquor evil, have been forbidden by state legislation made valid by the withdrawal of the protection of interstate commerce from such shipments under the act of Congress known as the Webb-Kenyon Act.

The amendment to the Constitution of the state of West Virginia, known as article 6, § 46, ratified in November, 1912, prohibits "the manufacture and sale and keeping for sale" of intoxicating liquors, with exceptions not material here; and it provides that:

"The Legislature shall, without delay, enact such laws, with regulations, conditions. securities and penalties as may be necessary to carry into effect the provisions of this section."

On February 11, 1913, the Legislature enacted a statute to take effect July 1, 1914, which in section three contained this provision:

"Except as hereinafter provided, if any person acting for himself, or by, for or through another shall manufacture or sell or keep, store, offer or expose for sale; or solicit or receive orders for any liquors or absinthe or any drink compounded with absinthe, he shall be deemed guilty of a misdemeanor * * * ; and any person, except a common carrier, who shall act as the agent or employé of such manufacturer or such seller, or person so keeping, storing, offering or exposing for sale said liquors, or act as the agent or employé of the purchaser of such liquors, shall be deemed guilty of such manufacturing or selling, keeping, storing, offering or exposing for sale, as the case may be; and in case of a sale in which a shipment or delivery of such liquors is made by a common or other carrier, the sale thereof shall be deemed to be made in the county wherein the delivery thereof is made by such carrier to the consignee, his agent or employé." Laws 1913, c. 13 (Code 1913, c. 32a, § 3 [sec. 1282]).

[2] 2. At the argument it seemed to be conceded that state legislation would be effective to make the place of delivery the place of sale, with respect to transactions within the scope of the state legislative power. The power of the state to enact laws regulating and control-

:ing commercial transactions within its own limits, subject only to the condition that the regulations shall not arbitrarily impair property rights or interfere with interstate commerce, has been affirmed in Sinnot v. Davenport, 63 U. S. (22 How.) 227, 16 L. Ed. 243, Delamater v. South Dakota, 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724, 10 Ann. Cas. 733, and innumerable other federal and state decisions.

"The internal commerce of a state—that is, the commerce that is wholly confined within its limits—is as much under its control as foreign or interstate commerce is under the control of the federal government." Sands v. Manistee River Improvement Co., 123 U. S. 288, 8 Sup. Ct. 113, 31 L. Ed. 149; Hart v. State, 87 Miss. 171, 39 South. 523, 112 Am. St. Rep. 437.

This power includes the regulation of sales and the change of the general rule of the common law, that delivery to the carrier is a completion of the sale, into a general statutory rule as to every sale that it shall not be complete until delivery to the consignee, or into a special statutory rule that the sale of intoxicating liquors shall not be complete until delivery to the consignee, and that the place of delivery shall be the place of sale. The validity of such a special statutory regulation is illustrated in State v. Herring, 145 N. C. 418, 58 S. E. 1007, 122 Am. St. Rep. 461, and State v. Patterson, 134 N. C. 612, 47 S. E. 808.

[3] 3. There is nothing in the amendment of the state Constitution that takes away by implication this power of the Legislature to provide that the place of delivery shall be the place of sale. It is true that the constitutional amendment prohibits "the manufacture, sale and keeping for sale" of liquors. But it does not indicate a purpose to deprive the Legislature of the power to determine what shall be considered the place of sale. Even if it be assumed that the framers of the amendment, in prohibiting the sale of liquors, had in view the general common-law rule that the sale was to be considered made out of the state on delivery to the carrier and intended to incorporate that conception of a sale into the prohibition of the organic law of the state as a permanent state policy, that by no means implies an intention to take from the Legislature the power to make other regulations and restrictions to be conveniently altered or added to or repealed from time to time as circumstances might require, but not considered proper to be imbedded in the Constitution as the permanent law of the state. This obvious and general principle was applied to constitutional and statutory provisions as to the liquor traffic in State v. Hooker, 22 Okl. 712, 98 Pac. 964.

[4] 4. The point is earnestly pressed that, even if it be true that under the statute in West Virginia delivery in any county of the state is a sale in that county, yet, under an exception of the statute, the express company has the right to promote illicit sales by daily carrying liquor to be delivered in the state in violation of its laws. The section of the statute above quoted does exempt a common carrier from the provision that any person "who shall act as the agent or employee of such manufacturer, or such seller or person so keeping, storing, offering or exposing for sale liquors shall be deemed guilty of such manufacturing or selling, keeping, storing, or exposing for sale as the case may be," and shall be punished as provided by this section. This exemption of the common carrier from punishment by fine and imprisonment for the carriage or storing of liquor cannot by any stretch

be held to imply consent by the state that the carrier may engage in the business of promoting the liquor traffic by conveying it to the place of sale. For such action the carrier by reason of the difficulties of its position may well be exempted, as in this instance, from punishment as a criminal the same as if it were a principal in the crime of keeping or selling. But the doctrine is well established that one who, either from carelessness or design, habitually serves those who are engaged in pursuits either criminal or detrimental to the public interest as established by legislative enactment, should be restrained by injunction from rendering the nefarious service, even if that service be not criminal in the sense that statutory punishment is not prescribed for it, or even if the statute excludes the idea of punishment for it as an active and knowing participation in the principal crime. The exception of the carrier from punishment by fine or imprisonment as an active participant in the crime of selling or keeping or storing, because of the difficulties of its situation, does not at all imply that habitual aid extended to others violating the law shall not be subject to injunction as a nuisance. If the obstruction of commerce be a nuisance subject to the remedy of injunction, as was held in Re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092, surely the active perversion of commerce by conveying goods to be delivered in violation of law may be enjoined. The principle, which seems too plain for further elaboration, is thus stated in the case cited:

"Every government, intrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all, and to prevent the wrongdoing to one resulting in injury to the general welfare, is often of itself sufficient to give it standing in court."

[5] 5. The requirement relied on by the express company that common carriers shall keep books showing the name of the consignee, etc., may better be regarded as a means of gaining information upon which to seek relief against the transportation and delivery by carriers of contraband liquor as distinguished from that to be legitimately used under the exceptions set out in the statute, than as a consent that they should transport and deliver contraband liquor.

6. The right of the state to an injunction against the persistent transportation by the express company of liquor to be delivered in West Virginia, in pursuance of a contract of sale made in another state, is reinforced by the fact that the express company has transported the liquor which Clendenin was induced to order from Beigel by solicitation through circulars and price lists, expressly forbidden and made criminal by section 8 of the statute, and that the express company intends to continue to transport and deliver for Beigel to purchasers in West Virginia liquors which he has contracted to sell, and intends to deliver through the express company, on orders obtained by solicitation forbidden by the statute. But as we have endeavored to show, the relief of injunction is not dependent on this consideration.

[6] 7. It makes no difference that the United States mail was used

for the solicitation. The federal government does not protect those who use its mails to thwart the police regulations of a state made for the conservation of the welfare of its citizens. The use of the mail is a mere incident in carrying out the illegal act, and affords no more protection in a case like this than a like use of the mails to promote a criminal conspiracy, or to perpetrate a murder by poison, or to solicit contributions of office holders in violation of the civil service law, or to obtain goods under false pretenses, In re Palliser, 136 U. S. 257, 10 Sup. Ct. 1034, 34 L. Ed. 514; United States v. Thayer, 209 U. S. 39, 28 Sup. Ct. 426, 52 L. Ed. 673; Hayner v. State, 83 Ohio St. 178, 93 N. E. 900; State v. Morrow, 40 S. C. 221, 18 S. E. 853.

8. The express company further contends that the state is not entitled to an injunction against the delivery in West Virginia of the liquor which it has transported for Beigel, or against its intended transportation and delivery of liquor which Beigel intends to consign to other persons in West Virginia, on the assertion that these transactions are under federal protection as interstate commerce and beyond the reach of the Legislature of the state. This proposition is admitted to be sound, unless the Webb-Kenyon Act removes the protection, and subjects the delivery of liquor in West Virginia to the inhibition of the state Legislature, although the contract of sale be made in Ohio for the shipment of liquor to West Virginia.

[7] 9. The position is untenable that the Webb-Kenyon Act has no application, and therefore is without efficacy to extend the scope of the state legislation to interstate dealings in liquor because that statute was not enacted until March 1, 1913, after the West Virginia statute had been passed on February 11, 1913. The point has not been decided by the Supreme Court of West Virginia. There is a dictum in State v. Miller, 66 W. Va. 436, 66 S. E. 522, 19 Ann. Cas. 604, in favor of the position of the express company, where the question was the application of the Wilson Act to West Virginia legislation. But, as the court expressly stated, the point was not and could not be involved since the state statute under consideration had been re-enacted after the passage of the Wilson Act.

[8] But even if this had been a direct decision, we do not think it could prevail against the contrary view of the Supreme Court of the United States; for we venture to think the question is not one of the construction of a state statute, but of the force and effect of a federal statute in a state law, and on such an issue the decisions of the Supreme Court of the United States are controlling. That court thus determined the matter in Re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, in passing on the effect of the Wilson Bill:

"Congress did not use terms of permission to the state to act, but simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part. It imparted no power to the state not then possessed, but allowed imported property to fall at once upon arrival within the local jurisdiction."

This principle has been reaffirmed in Butler v. Goreley, 146 U. S. 303, 13 Sup. Ct. 84, 36 L. Ed. 981; Emert v. Missouri, 156 U. S. 296, 15 Sup. Ct. 367, 39 L. Ed. 430; Central P. C. R. Co. v. Nevada, 162

U. S. 512, 16 Sup. Ct. 885, 40 L. Ed. 1057; Silz ,v. Hesterberg, 211 U. S. 31, 29 Sup. Ct. 10, 53 L. Ed. 75.

[9] This is the Webb-Kenyon statute including the title:

"An act divesting intoxicating liquors of their interstate character in certain cases.

"Be it enacted, etc., that the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, * * * from any foreign country into any state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, which said spirituous, vinous, malted, fermented or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state, territory or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, is hereby prohibited."

10. The terms of the statute are so plain and unambiguous that we are unable to perceive that its interpretation requires any resort to construction. The Wilson Bill withdrew the protection of interstate commerce from liquor and made it subject to the state law only after arrival and delivery to the consignee. But under that statute, after arrival and delivery to the consignee "imported liquor fell within the category of domestic articles of a similar nature." In re Rahrer, supra.

The Webb-Kenyon Act is the result of a growing public conviction that it was an abuse of interstate commerce that even under the Wilson Bill liquor dealers in one state were protected in impairing or defeating the efforts of another state to root out or to minimize the evil of the use of liquor as a beverage. This statute prohibits the shipment or transportation of liquor from one state into another, not only when it is intended to be sold in violation of any law of such state, but when it is to be received or possessed or in any manner used in violation of the state law. This is a direct recognition of the right of the state to prohibit the receipt or delivery as well as the possession and use of liquor, without trespassing upon the power of Congress to regulate interstate commerce. The state of West Virginia has enacted with reference to a contract for the sale of liquor that "the sale thereof shall be deemed to be made in the county wherein the delivery thereof is made by such carrier to the consignee," and it expressly forbids a sale within the state. This makes the receipt or delivery have the effect of a sale, and in forbidding the sale it forbids the receipt or delivery, which under the statute is the consummation of the sale. Thus it appears that the transportation and delivery already made in this case and the transportation and deliveries contemplated for the future fall within the express description of the transactions from which the Congress intended to withdraw the protection of interstate commerce. Any other construction would not only distort the language, but continue the obstacles to the enforcement of state prohibition laws which it was the manifest intention of the Congress to remove. The Supreme Court of Kentucky has held that, although the state statute expressly prohibits the delivery of liquor by a common carrier, and such prohibition is valid as to all in-

trastate shipments, yet the Webb-Kenyon Act does not permit such prohibition to extend to interstate commerce where the liquor is for personal use. Adams Express Co. v. Commonwealth, 154 Ky. 462, 157 S. W. 908, 48 L. R. A. (N. S.) 342.

11. All other decisions we think are in complete accord with the conclusion we have reached, namely, that the Webb-Kenyon Act puts without the protection of interstate commerce liquor shipped into the state to be sold, received, or used, when sale, receipt, or use is forbidden by the state law. Palmer v. Express Co., 129 Tenn. 116, 165 S. W. 236; State v. Doe, 92 Kan. 212, 139 Pac. 1169; State v. Express Co. (Iowa) 145 N. W. 451; United States v. Oregon-Washington R. & N. Co. (D. C.) 210 Fed. 378; Van Winkle v. State (Del.) 91 Atl. 385; Ex parte Peede (Tex.) 170 S. W. 749; Southern Express Co. v. State (Ala.) 66 South. 115; Amer. Express Co. v. Beer (Miss.) 65 South. 575. The general trend of congressional debate on the bill attributed the same meaning to the act, as did also the opinion of the Attorney General given to the President on the question of its constitutionality. Since delivery by one party is necessary to the receipt by another, if receipt be forbidden by a statute, deliveries might well be enjoined as acts promoting illegal receiving of liquor. Under the West Virginia statute they are the subject of injunction as sales within the state.

[10] 12. The constitutionality of the Webb-Kenyon statute is attacked on the ground that it is an attempt by Congress to confer on state Legislatures the power to regulate interstate commerce. This, we think, is a complete misapprehension. That the Congress has power to outlaw and exclude absolutely or conditionally from interstate commerce intoxicating liquors or any other deleterious substance has been very often decided. Ex parte Rahrer, supra; Lottery Case, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492; Hoke v. United States, 227 U. S. 308, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905; Hipolite Egg Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364. The distinction is between things deleterious and things beneficial or innocuous. The power to regulate is the power to make reasonable rules of admission or exclusion. The power to exclude intoxicants absolutely or conditionally does not import the power to exclude sound wheat.

13. The following language of Mr. Justice White in Vance v. Vandercook, 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100, referring to the regulations of the South Carolina dispensary law, was cited here and has been cited elsewhere as giving countenance to the notion that the Congress has no right to legislate against the shipment or transportation of liquor intended for personal use from a license state to a prohibition state:

"On the face of these regulations, it is clear that they subject the constitutional right of the nonresident to ship into the state and of the resident in the state to receive for his own use, to conditions which are wholly incompatible with and repugnant to the existence of the right which the statute itself acknowledges. The right of a citizen of another state to avail himself of interstate commerce cannot be held to be subject to the issuing of a certificate by an officer of the state of South Carolina, without admitting the power of that officer to control the exercise of the right. But the right arises from the Constitution of the United States; it exists wholly independent of

the will of either the lawmaking or the executive power of the state; it takes its origin outside of the state of South Carolina, and finds its support in the Constitution of the United States."

It is perfectly manifest that this language refers to the constitutional provision giving the Congress control of interstate commerce to the exclusion of the states, and not to the power of the Congress under the authority of the Constitution to exclude absolutely or conditionally deleterious substances.

As to intoxicating liquors, though universally recognized as deleterious, the Congress has not seen fit to exclude them entirely from interstate commerce, but has made the exclusion on this condition, namely, that they shall not be transported by common carriers into particular states when such transportation would be especially injurious to the public interest, in that, when they reach the state, they will derange and make inefficacious the police measures for the control of intoxicants which the state has seen fit to adopt. The courts can hardly find room to doubt that this qualified exclusion made in aid of the efforts of a number of the states of the Union to combat one of the greatest evils of human life is founded on deep reason and enlightened public policy.

We think that the state of West Virginia is entitled to the order of injunction prayed for, and it will be so ordered.

Reversed.